Edwin R. FREDRICK

v.

The UNITED STATES.

No. 255–73.

United States Court of Claims.

Dec. 18, 1974.

Earl W. Wolfe, Tulsa, Okl., attorney of record, for plaintiff.

Iraline G. Peniston, Washington, D. C., with whom was Asst. Atty. Gen., Carla A. Hills, for defendant.

Before COWEN, Chief Judge, and SKELTON and KASHIWA, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

Plaintiff was formerly employed as a Supervisory Aircraft Quality Control Representative, GS–1942–12, for the Defense Supply Agency, Defense Contract Administration Services Region, Dallas (DCASR–Dallas). In the spring of 1971, after receiving a Separation/Reduction-in-Force (RIF) Notice, he retired from his position, and he has not been rehired by the agency. In this case, plaintiff claims that he is entitled to reinstatement to his former position and back pay from the date of his allegedly involuntary retirement, because he was erroneously not afforded the job retention protection of 5 U.S.C. §§ 3501–3502 (commonly known as part of the Veterans' Preference Act). Plaintiff also argues

that the Civil Service Commission (CSC) should have accepted his appeal from the RIF, because the retirement was an involuntary act on his part, and that the Defense Supply Agency has improperly denied him priority in reemployment.

The constitutionality of the Veterans' Preference Act has been challenged in other cases, but we believe this is the first case in which the issue to be decided is whether the Act violates the due process clause of the Fifth Amendment to the extent that it discriminates against those serving the government in a civilian capacity under a War Service Appointment. We conclude that the Veterans' Preference Act does not unduly discriminate against War Service appointees; we further assume for the purposes of this case that plaintiff's resignation was an involuntary act on his part; and we remand the case to the Defense Supply Agency with directions to hear and determine, in the first instance, plaintiff's claimed priority rights to employment in that agency.

The case is before us on cross-motions for summary judgment, and the facts essential to a decision in this case are not disputed. On February 8, 1943, plaintiff received a War Service Appointment as a Principal Procurement Inspector (Aircraft) from the War Department—Army Air Forces at Large. The appointment was made pursuant to Executive Order No. 9063, 3 C.F.R. at 1091 (Cum.Supp.1943), and plaintiff worked in Tulsa, Oklahoma. On March 5, 1945, plaintiff received a 2-B classification from his local draft board at the request of Colonel H. A. Strauss, his superior, pursuant to Executive Order No. 9309, 3 C.F.R. at 1256 (Cum.Supp.1943). Plaintiff's appointment was for the duration of World War II, and he could not resign without prejudice. At the conclusion of the war, the appointment was terminated by a reduction in force with an effective date of September 30, 1945. Plaintiff emphasizes the fact that he performed an important service for the country in time of war by seeing that the war materials and equipment furnished to the military personnel met the requisite governmental specifications and standards.

On March 12, 1951, the plaintiff reentered Federal service and was employed by the United States Air Force, AMC, Southern Air Procurement District, as an Aircraft Inspector at the Douglas Aircraft Company, Tulsa, Oklahoma. Between March 12, 1951 and May 31, 1971, he progressed in pay grades from GS–8 to GS–12. During the period from March 29 to April 2, 1971, the agency conducted a workload survey that resulted in a reorganization of plaintiff's section. On April 7, 1971, plaintiff received a Separation/Reduction-in-Force Notice with an effective date of separation of June 11, 1971. On April 23, 1971, W. M. Allison, Chief of the Office of Civilian Personnel, circulated a memorandum notifying all employees that a 4.5 percent cost-of-living increase would be available to retirees off the rolls on or before May 31, 1971. On April 26, 1971, plaintiff applied for retirement, specifically stating in the application "Retirement—Discontinued Service (Involuntary)," and the retirement became effective on May 31, 1971.

On June 21, 1971, plaintiff filed an appeal with the Regional Office of the CSC, arguing that he was improperly denied the benefits of the Veterans' Preference Act in the RIF, and this appeal was subsequently taken to the CSC Board of Appeals and Review. On November 17, 1971, the Board found that the CSC had no authority to hear Mr. Frederick's appeal because he chose to resign voluntarily, rather than be separated by the RIF. In addition to refusing to accept the appeal, the Regional Office also sent plaintiff a letter on July 29, 1971, explaining that he was not entitled to veterans' preference because he had not served on active duty in military service. The Board also reviewed this aspect of plaintiff's appeal and concluded that plaintiff did not qualify for veterans' preference.

After the CSC's decision on his request for review of the RIF, plaintiff attempt-

ed to obtain reemployment with the agency. In the April 7, 1971, notification of his selection for separation under the RIF, the agency advised plaintiff that he had been placed in tenure group I–B and entered upon the Reemployment Priority List. Thereafter, on May 27, 1971, Colonel Harold W. Yount, Commander, Defense Supply Agency, DCASR–Dallas, issued a letter to all employees concerning the "DoD Priority Placement Program." In this letter, Colonel Yount stated:

> Displaced employees affected by manpower reductions in the Department of Defense will be given first priority for vacancies in our activity. President Nixon has given strong backing to this effort. The Department of Defense has established a program to assure this policy is followed. It is called the "DoD Priority Placement Program," commonly called a "Stopper List" in practical application.

On June 9, 1972, plaintiff applied for the vacant position of Quality Assurance Specialist, GS–11. Mr. Fredrick was not selected for this position; it was filled by promoting another employee within the agency. On July 17, 1972, Mr. Fredrick appealed this decision to the Regional Office of the CSC and then to the Board of Appeals and Review, claiming that he should have been given priority in filling the vacant position. On December 19, 1972, the Board ruled against Mr. Fredrick on the ground that his claim for priority in reemployment was a matter of agency policy and that there had been no violation of the Civil Service Regulations.

I

The primary issue concerns the constitutionality of 5 U.S.C. §§ 3501–3502 (hereinafter sometimes referred to as the Veterans' Preference Act). Plaintiff is not a veteran because he was not honorably discharged after serving on active duty in the Armed Forces (5 U.S.C. § 2108(1)), and consequently, he is not a "preference eligible" as that term is defined for purposes of Title 5 of the United States Code, 5 U.S.C. § 2108(3) (1970). Plaintiff argues that his civilian governmental service should entitle him to the job retention benefits of the Veterans' Preference Act and that the Act is an unconstitutional violation of his rights to equal protection of the laws and of the due process clause of the Fifth Amendment to the extent that it discriminates against those serving under a War Service Appointment.[1] We cannot accept this contention.

In approaching the equal protection claim, we must decide whether the Act creates an arbitrary distinction between two classes of persons which is wholly unrelated to the objective of the statute. The classification prescribed by the Act " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, [40 S.Ct. 560, 64 L.Ed. 989] (1920)." Johnson v. Robison, 415 U.S. 361, 374–375, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974).

The provision for retention of veterans in Federal service has been accepted practice for many years. In 1876, Congress passed a statute requiring the head of any executive department in "reduction of force" actions to "retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors."

---

1. On numerous occasions the Supreme Court has reiterated that "while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' " Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). *See* Johnson v. Robison, 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); Frontiero v. Richardson, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Shapiro v. Thompson, 394 U.S. 618, 641–642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Act of Aug. 15, 1876, ch. 287, § 3, 19 Stat. 169. This policy has been continued and expanded to the present time.[2]

In order to determine the reasonableness of the classification, it is necessary to examine the objective of the statute. The present statutory framework is based primarily on the Veterans' Preference Act of 1944, ch. 287, 58 Stat. 387. Mr. Starnes, the sponsor of H.R. 4115, which eventually became the 1944 Act, stated the purpose of the Act in these words:

> What [H.R. 4115] does is to give legislative sanction to existing veterans' preference, to the rules and regulations in the executive branch of the Government, and to broaden and strengthen those preferences, with the idea that when a man is selected by the country *to serve in battle and give his life, if need be,* for the preservation of this country and its institutions, that same man is certainly entitled to some degree of preference for positions in Government departments and agencies in serving his country in peacetime. *It is a reward to a man for patriotic duties well performed; it encourages our young men and women to serve their country in an hour of need; and it makes them feel when they have given their all or offered to give their all in defense of this country and its institutions, that a grateful country will recognize their sacrifice and service when peaces [sic] comes by giving them preference for service in various capacities with their Government.* (Emphasis added.)

Hearings on S. 1762 and H.R. 4115 before the Senate Comm. on Civil Service, 78th Cong., 2d Sess. 8 (1944). Mr. D'Alesandro stated his position as follows:

> I favor this legislation because this nation has trained 12,000,000 fighting men to destroy and kill. They have been taken away from schools, colleges, and jobs. Their home life has been broken up, and they have turned into hard tough soldiers and sailors * * *.

> * * * * * *

> The millions of men and women returning from the war fronts and camps will need jobs, money, training, hospitalization, and other assistance. They expect stability and security, so that they can start rebuilding their private lives.

> We must give them all that. It is the least we can do for them. * * * [90 Cong.Rec. 3506 (1944)]

These statements indicate that there are several justifications for the Act. Those in military service suffer a greater loss of personal freedom than do their civilian counterparts: they are subject to discipline, possible relocation overseas, and potentially hazardous duty. Military personnel are often beset with greater problems in reorienting themselves to civilian employment than non-military persons, and the veterans are entitled to a reward for their services. This rationale is similar to that usually given for State veterans' preference acts. In Koelfgen v. Jackson, 355 F.Supp. 243, 251 (D.Minn. 1972), aff'd mem., 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173 (1973), the court listed the following reasons as those which have historically been given to justify veterans' preference:

> 1. The State owes a debt of gratitude to those veterans who served the nation in time of peril. State ex rel. Kangas v. McDonald, 188 Minn. 157, 246 N.W. 900 (1933).

> 2. A veteran is likely to possess courage, constancy, habits of obedience and fidelity, which are valuable qualifications for any public office holder. Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034 (1904).

> 3. Veterans should be aided in rehabilitation and relocation because military service has disrupted their nor-

---

2. *See* Act of Aug. 23, 1912, ch. 350, § 4, 37 Stat. 413; Veterans' Preference Act of 1944, ch. 287, § 12, 58 Stat. 390; Act of Aug. 19, 1964, Pub.L. No. 88–448, § 202(1)–(3), (4)(c),

78 Stat. 486; Act of June 29, 1968, Pub.L. No. 90–367, § 3, 82 Stat. 278; Act of Oct. 22, 1968, Pub.L. No. 90–623, § 1(23), 82 Stat. 1313.

mal life and employment. Note, 26 Wash. & Lee L.Rev. 165 (1966). *See* Feinerman v. Jones, 356 F.Supp. 252, 259 (M.D.Pa.1973).

Plaintiff argues that the generally accepted rationale for the veterans' preference applies equally as well to him because he too suffered problems of disruption of his life; he developed as much "courage, constancy, habits of obedience and fidelity" as a veteran who was a desk clerk, a medic, a chaplain or a quartermaster; and the nation owes him a debt of gratitude for his services in the war effort. While plaintiff's work in the production effort on the "home front" may well have been a valuable service, it differs in many significant respects from military duty. Plaintiff did not leave the country, nor was he subject to reassignment abroad. In his position, he could not be called upon to risk his life in combat or to suffer the rigors of military life, and it is doubtful whether his problems in readjusting to private life were comparable to those whose military skills were not as readily adaptable to private life as were plaintiff's. The fact that Mr. Fredrick, as a War Service appointee, was denied the right to resign without prejudice during the period of his appointment, or that he received a 2–B draft classification from his local draft board during part of the time of his appointment does not place him in the same category as military veterans when it comes to receiving job retention benefits.

The principle of granting preference to veterans in certain aspects of public employment has been accepted in both State and Federal practice. *See, e. g.,* White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868, cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); Feinerman v. Jones, *supra*; Koelfgen v. Jackson, *supra*.[3] In White v. Gates, the petitioners, non-veteran Government employees, claimed that the Veterans' Preference Act discriminated against them in violation of their constitutional rights. A single judge on the District Court dismissed the complaint without convening a three-judge court because the complaint failed to raise a substantial constitutional question. In affirming that decision, the United States Court of Appeals for the District of Columbia stated:

> Veterans' preference in federal employment has been an established policy of Congress for many years. Encouragement and reward of military service are its rational basis. If it is unwise and costly, this does not make it unconstitutional. The Supreme Court and other courts have enforced it, and have done so without suggesting any possible constitutional difficulty [253 F.2d at 869].

This case is similar to the recent Supreme Court decision in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). In *Robison*, a conscientious objector, who had satisfactorily performed two years of alternative service at Peter Bent Brigham Hospital, Boston, brought a class action seeking to have 38 U.S.C. §§ 101(21), 1652(a)(1), and 1661(a), which, taken together, provide the standards for entitlement to the ben-

---

**3.** There are numerous cases which have upheld the constitutionality of granting veterans preference in public employment. Some of these include: State ex rel. Higgins v. Civil Service Comm. of Bridgeport, 139 Conn. 102, 90 A.2d 862 (1952); People ex rel. Sellers v. Brady, 262 Ill. 578, 105 N.E. 1 (1914); Shaw v. Marshalltown, 131 Iowa 128, 104 N.W. 1121 (1905); Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034 (1904); Ricks v. Dept. of State Civil Service, 200 La. 341, 8 So.2d 49, (1942); McNamara v. Director of Civil Service, 330 Mass. 22, 110 N.E.2d 840 (1953); Swantush v. Detroit, 257 Mich. 389, 241 N.W. 265 (1932); State ex rel. Kangas v. McDonald, 188 Minn. 157, 246 N.W. 900 (1933); Gianatasio v. Kaplan, 257 N.Y. 531, 178 N.E. 782 (1931), cert. denied, 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512 (1932); Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568, 3 A.2d 701 (1938) (statute constitutional in part); State ex rel. Raines v. Seattle, 134 Wash. 360, 235 P. 968 (1925). On the other hand, some cases have found state veterans' preference statutes unconstitutional, but these do not affect the outcome of this suit. *See* Brown v. Russell, 166 Mass. 14, 43 N.E. 1005 (1896); Commonwealth ex rel. Maurer v. O'Neill, 368 Pa. 369, 83 A.2d 382 (1951); Carney v. Lowe, 336 Pa. 289, 9 A.2d 418 (1939).

efits of the Veterans' Readjustment Benefits Act of 1966, declared unconstitutional in violation of the First and Fifth Amendments. Robison claimed, in part, that he was as entitled to the benefits of that Act as were the veterans who served on active duty and that the Act violated the equal protection principle to the extent that he was denied these benefits. After examining the legislative background of the 1966 Act, the Court found the Act was designed to compensate for the disruption military service causes to civilian lives, and not merely to eliminate the educational gaps between those who served their country and those who did not. The Court also determined that the disruptions caused by military life were qualitatively and quantitatively different from the disruptions caused by Robison's alternative service and that this difference was sufficient to form a rational basis for the congressional classification. Moreover, the Court held that the statutory classification bore a rational relationship to the stated goal of "enhancing and making more attractive service in the Armed Forces of the United States" (415 U.S. at 382, 94 S.Ct. at 1173), and the Court upheld the constitutionality of the Act.

The Veterans' Preference Act and the Veterans' Readjustment Benefits Act are two ways in which Congress sought to help military veterans. We find, as did the Supreme Court in *Robison*, that Congress had a rational basis for differentiating between veterans who served on active duty and those who performed a type of "alternative service" in a civilian capacity. There is a qualitative difference between civilian employment and service in the military, even when the military service is confined to non-combat duty. As Mr. Starnes stated when he introduced H.R. 4115, veterans' preference in employment encourages men and women to serve their country in the military. The Court in *Robison* found these grounds sufficient to provide a rational basis for the Veterans' Readjustment Benefits Act, and we find them similarly applicable here. Congress had a reasonable basis for excluding War Service appointees from the benefits of the Veterans' Preference Act, and we hold that there is no undue discrimination or unequal application of the law in denying plaintiff the privileges of the Act.

■ Plaintiff also argues that it violates due process to deprive him of the right to continue in public employment through the use of an arbitrary preference which has no rational basis and contends that he was denied a hearing prior to termination to determine whether he was better qualified than the eligible veterans. We reject both arguments. As discussed above, there is a rational basis for giving veterans preferential treatment in employment. Furthermore, once plaintiff received his RIF notice on April 7, 1971, he was entitled to a review by the CSC to determine whether his rights were violated. *See* 5 C.F.R. § 351.901. Also, if the facts show that his retirement was involuntary under circumstances amounting to an adverse action, he was entitled to have his appeal heard by the CSC. *See* Perlman v. United States, 490 F.2d 928, 203 Ct.Cl. 397 (1974). These procedural protections have not previously been found lacking in due process, and we do not now find them lacking. Contrary to plaintiff's assertions, Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966) is inapposite here. That case involved different statutes and arose under circumstances wholly unrelated to the situation at hand.

## II

The next question is whether plaintiff had a right to have his appeal on the RIF action heard by the CSC even though he retired prior to the effective date of the RIF and was not separated by the RIF. In Perlman v. United States, *supra*, we held that a combination of circumstances, including faulty action by the Government, was sufficient to show that an employee's resignation was involuntary and that he was entitled to a hearing by CSC on the merits of the RIF in his case. In this case, it is not necessary to resolve the difficult ques-

tion of whether Mr. Fredrick acted voluntarily within the purview of the *Perlman* decision when he "chose" to retire. In his administrative appeals and before this court, plaintiff has sought to challenge the RIF on the constitutional issue only; he does not claim that the RIF was otherwise improper. As discussed above, the Act does not unduly discriminate against him or otherwise violate his constitutional rights. Assuming, *arguendo*, that plaintiff's resignation was involuntary and that the CSC should have heard his appeal, plaintiff cannot succeed on his constitutional claim.

It would serve no useful purpose to find that the CSC should have given Mr. Fredrick a hearing and then to remand the case for the CSC to consider the constitutional issue in the first instance, as defendant has requested. This is not a matter where it is important for the agency to prepare the factual record, to interpret a statute which it is authorized to administer, or to apply its own regulations. Moreover, the CSC Board of Appeals and Review has already given some indication of its position that Mr. Fredrick is not entitled to the benefits of the Veterans' Preference Act. Since we find that plaintiff's constitutional claim is without merit, there is no need for further action by the CSC.

### III

Finally plaintiff claims his priority reemployment rights were violated. In the notification of plaintiff's selection for the RIF, the agency placed plaintiff in tenure group I–B and entered him upon the Reemployment Priority List. Plaintiff admits that the Defense Supply Agency has not violated the CSC regulations governing appointments from the Reemployment Priority List by filling the vacant position through promotion of a current employee within the agency. *See* 5 C.F.R. § 330.201; Federal Personnel Manual § 330–337, Subchap. 2, Subsection 2–2(2) (June 27, 1968). Instead, plaintiff relies on the letter from Colonel Yount, Commander Defense Supply Agency, DCASR–Dallas, issued on May

27, 1971, to show that he was entitled to first priority in filling vacant positions.

Mr. Fredrick's July 17, 1972, appeal to the CSC (his second appeal under consideration in this case) was based primarily on this letter. In rejecting plaintiff's claim, the CSC found that the Civil Service Regulations had not been violated, and with respect to Colonel Yount's letter, the Board said:

> Since it is clear that the Commander's letter of May 27, 1971 relates to agency policy and not to a matter of the Civil Service Regulations, whatever rights accrued to the appellant from this letter should be pursued within the agency's channels and not with the Civil Service Commission.

Colonel Yount's letter indicates that the Department of Defense had established its own special policy and program with respect to priorities in filling vacancies within the agency. This program was called the "DoD Priority Placement Program." But except for Colonel Yount's letter, there is nothing in the record which explains the program or sets forth the procedure to be followed. In view of this and other questions that may arise concerning plaintiff's priority rights, we think that these are matters which are better left for resolution in the first instance by the Defense Supply Agency. Plaintiff should not be faulted for his failure to exhaust his administrative remedy within the agency before filing this suit, because there is nothing in the record to show that he was informed of any rights he may have had to appeal to the agency.

Accordingly, it is hereby ordered that this case is remanded to the Defense Supply Agency pursuant to Pub.L. 92–415, 86 Stat. 652, and Rule 149(b), for a period not to exceed 6 months from the date of this order. Plaintiff shall have 30 days from this date within which to file his appeal with the Defense Supply Agency to establish whatever rights he may be entitled to under the DoD Priority Placement Program, referred to in Colonel Yount's letter of May 27, 1971. Upon receipt of plaintiff's appeal, the

agency is directed to hear and determine plaintiff's rights under the DoD Priority Placement Program. Further proceedings in the court shall be stayed during the period fixed in this order of remand. Defendant's counsel is designated to advise the court by letter to the clerk of the status of the remand proceedings, and such advice shall be given at intervals of 90 days or less, commencing with the date of this decision.