Jon P. BRUINOOGE

v.

The UNITED STATES.

No. 443–75.

United States Court of Claims.

Feb. 23, 1977.

Jon P. Bruinooge, pro se.

David C. Hickman, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant. Theodore D. Peyser, Jr. and Robert S. Watkins, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and DAVIS and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

These cross-motions for summary judgment present no triable issue of relevant fact. Plaintiff, formerly a captain in the United States Air Force, challenges the constitutionality of section 112 of the Internal Revenue Code of 1954, which excludes from the gross income of enlisted personnel and warrant officers all of the military compensation they earn in a combat zone, but limits the commissioned officers' exclusion to $500 per month. For part of both 1972 and 1973, plaintiff served in Vietnam,

designated a combat zone for the purposes of section 112 in Executive Order 11216, 3 C.F.R. 301 (1964–1965 Compilation), *reprinted in* 26 U.S.C.A. § 112 (1965), and paid the tax prescribed for his monthly income in excess of $500. Now plaintiff seeks a refund of that tax, on the grounds that the statutory distinction between commissioned officers and other military personnel is so arbitrary and capricious that it denies him due process of law guaranteed by the fifth amendment. After the Internal Revenue Service denied his timely claim for refund, in which he had advanced the same grounds, plaintiff sued in this court. Plaintiff deserves our compliments for bearing the burden of raising this important question, and pursuing it so effectively. Despite plaintiff's forceful arguments, however, we conclude that the statute withstands the challenge. We must hold for defendant.

 Plaintiff rests his claim that section 112 is unconstitutional solely on its alleged violation of the due process clause of the fourteenth amendment, which by its terms applies only to state legislation and not to the acts of Congress. Nevertheless, plaintiff points out that the doctrines our courts have developed for resolving equal protection questions have now been incorporated also into the notions of due process. *See, e.g., Schneider v. Rusk,* 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). This point appears to have been settled in our court at least since we recognized that the fifth amendment, even though it contains no equal protection clause, forbids discrimination so unjustified as to deny due process. *Fredrick v. United States,* 507 F.2d 1264, 1266 n.1, 205 Ct. Cl. 791, 796 n.1 (1974). Accordingly, we should declare this statute unconstitutional if we conclude that the classification it establishes lacks any rational basis. In this connection, plaintiff refrains from contending that commissioned officers comprise a "suspect class" which would require that burdens imposed upon them satisfy a stricter standard of justification. One's becoming an officer, which normally is voluntary, is un-

like those "immutable characteristic[s] determined solely by the accident of birth," that have given rise to the stricter standard. *Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973).

Because this case involves a constitutional challenge to a tax statute, the Government seems sometimes to urge us to apply a test even less demanding than the rational basis test. The Government relies on the Supreme Court's remark in *Brushaber v. Union Pacific R.R. Co.,* 240 U.S. 1, 24, 36 S.Ct. 236, 60 L.Ed. 493 (1915), that the exercise of the taxing power was constitutional unless it was so arbitrary or so grossly inequitable in its basis for classifying taxpayers that it must be regarded as confiscatory, within the fifth amendment meaning of a taking. It is unclear whether such a test, if it is in fact more lenient than the traditional test, still exists. At least, we are unaware that it has ever been invoked, for the Supreme Court has sustained discriminations in federal tax statutes that have been constitutionally challenged upon finding that a sufficient rational basis existed. There was no need to explore further. *See United States v. Maryland Savings-Share Insurance Corp.,* 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970) (per curiam), and cases cited therein at p. 6. In our case, too, whether there exists a different constitutional standard for tax statutes is immaterial because the statutory distinction under attack is supported by a rational basis.

 The course of our analysis has already been charted by our treatment of the issue presented in *Fredrick, supra,* which itself followed the Supreme Court's model, *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The plaintiff in *Fredrick,* a civilian War Department employee during World War II, challenged the constitutionality of the Veterans' Preference Act, 5 U.S.C. §§ 3501–02, which confers certain priorities in obtaining and keeping Government employment upon former military personnel. Our task there, as we stated it, was to determine whether the

statute created an arbitrary distinction between two classes of persons that was unrelated to the objective of the statute. We echoed the now-familiar formula for such inquiries when we said, "The classification prescribed by the Act 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" 507 F.2d at 1266, 205 Ct.Cl. at 797. We proceeded then to determine the reasonableness of the statutory classification by comparing the distinctions created with the statutory purpose. We were enlightened in *Fredrick* by the legislative history of the Veterans' Preference Act, which preserved for our review the sentiments of the Act's proponents. We suffer today from the absence of any enlightening committee report or debate over section 112. None has been cited by the parties or discovered in our own research. Congress has granted tax exemption for service men since 1945, that enactment being retroactive to 1941 for enlisted men and 1943 for commissioned and warrant officers. It has never treated these categories the same. *See* Revenue Act of 1945, Pub.L. No. 79–214, § 141(a), 59 Stat. 556, 571; Revenue Act of 1950, Pub.L. No. 81–814, § 202(a), 64 Stat. 906, 927. We cannot ascertain what Congress sought to accomplish by adding this provision to the tax code in 1945 and by its later amendments. Yet, because our analysis requires that we try to divine what Congress left unstated, we resort to our own talents and those of counsel to discern what legitimate purpose Congress assigned to this statute, and then to test whether the less favorable treatment given commissioned officers bears a reasonable relationship to that purpose. While we rely on our own judgment in seeking out a legislative purpose, we are cautious lest we inadvertently evaluate the statute's effectiveness or the quality of its drafting. These matters are exclusively within the legislative realm; the Congress must be afforded considerable deference in this inquiry. So long as there is some rational basis for the distinction, the statute is constitutional. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

We are indebted to both parties whose valuable briefs and able arguments offset considerably the absence of a legislative history. With obvious care and attention to detail, both sides have examined the statute and its effects in operation to better apprise us of what may, or may not, be its underlying purpose. The Government suggests that section 112 reflects Congress' desire to reduce taxes for those most in need of a tax benefit, namely, those below the grade of commissioned officer who, as a general matter, earn less than commissioned officers do. Plaintiff responds by pointing out that there are so many senior non-commissioned officers and warrant officers throughout the armed forces who received as much or more pay than some junior officers, that there is no reliable correlation between a taxpayer's rank and his income from which to fashion a rational basis for the statutory distinction. At this point, the parties quarrel over what statistical sample is appropriate to put this phenomenon in proper perspective. The Government argues that the number of warrant officers and enlisted personnel who actually earned more than plaintiff did not constitute more than one-tenth of one percent of the total military force. Plaintiff does not dispute this figure directly, but contends that its focus solely upon plaintiff's own situation is misleading. A more accurate measure of the discrimination created by section 112, plaintiff suggests, would result from determining how many non-commissioned personnel earn more pay than any junior officer. Plaintiff tells us that 18 percent of the entire military force is in this category. We need not reconcile these arithmetic differences. The constitutionality of the statute at issue cannot be determined solely from the number of specific anomalies that occur in the system of military pay. *Cf. Craig v. Boren,* 429 U.S. 190, 199–206, 208 n.22, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (demonstrating that statistical enumerations are of limited value in analyzing equal protection issues). We

must look instead to whether Congress acted arbitrarily in treating commissioned officers differently. In balance, we think not. Even plaintiff's own calculations reveal that the pay received by an average officer—even one occupying the lowest pay grades as plaintiff contends is the most accurate basis for comparison—exceeds that received by either an average senior warrant officer or enlisted man. Classifications are not required to be perfect, to be made with mathematical nicety, or to avoid all inequality. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) and cases there cited. It appears that section 112 reflects Congress' desire to grant a greater tax benefit to those whose incomes are smaller, a smaller benefit to those whose incomes are greater. Distinctions among taxpayers on this ground were upheld in *Brushaber.* We notice, furthermore, that Congress did not altogether deny officers any income exclusion, but only limited their maximum exclusion to $500. Congress may have balanced its urge to dispense tax benefits to military personnel stationed in the combat zone, with the Treasury's need to raise revenue, especially during wartime, by concluding that officers, on the whole, were better able to bear a proportionally greater tax burden. We cannot deny that this would be a constitutionally sufficient basis for the statute as enacted.

The Government proposes another justification for section 112, which deserves our attention because it does not depend solely upon the differences in incomes. The Government suggests that the larger income exclusion made available to non-commissioned officers was to offset, in a general way, the prestige and the various privileges conferred solely upon officers. We would not be surprised to find, if we could look to a legislative history, that this sentiment may have been foremost in the Congressional mind. Admittedly, one cannot identify what tangible and intangible advantages might have been the particular focus of Congress' concern for balance, or to correlate them precisely with rank. If we look at Title 10 of the U.S.Code, § 8011 &

ff., the portion dealing with the Air Force, we find an array of provisions. Those dealing with personnel deal separately with officers and enlisted persons more often than not, by a superficial count. *E.g.,* Air Force officers are entitled to larger quarters than are enlisted personnel, 10 U.S.C. § 9774. The Code of Military Justice specifies that enlisted men may be tried by courts martial comprised two-thirds of officers, but officers may be tried only by other officers. 10 U.S.C. § 825.

We have not attempted to weigh all the burdens, rights and privileges of officers, and enlisted men, to see which way the balance inclines. The point is that the Congress may have done so. It may have thought a tax preference would make the overall balance more even. Plaintiff referred to the "up or out" promotion rule under 10 U.S.C. §§ 8362 & *ff.,* 8846, as illustrating a burden on officers having no counterpart among enlisted men, including warrant officers. He did not attempt an analysis over all of the benefits and burdens, and it would exceed our cerebral powers to do so.

■ We take judicial notice that service in combat zones was more likely to be voluntary in the case of officers. In only a few special situations could a person be an officer subject to service in a combat zone, against his will. On the other hand, the enlisted components, in view of the draft, were likely in combat zones to be made up substantially of the unwilling. In the case of Vietnam specifically, repugnance to serving there in an enlisted capacity was widespread, while, among officers, it was frequently found that assignments to Vietnam were eagerly sought. It may be that, besides the stick of Selective Service, Congress thought that, for enlisted men, the carrot of a generous tax exemption was also necessary. With officers, the problems were of a different nature and required different measures for their solution.

Accordingly, upon the briefs and oral arguments of counsel, the defendant's motion for summary judgment is granted, the

plaintiff's motion for summary judgment is denied, and the petition is dismissed.