**FIRST NATIONAL BANK OF OREGON,** duly appointed Executor of the Estate of Bertha E. Chambers and Trustee of the Bertha E. Chambers Charitable Remainder Unitrust

v.

**The UNITED STATES.**

No. 135–77.

United States Court of Claims.

Feb. 22, 1978.

William J. Lehrfield, Washington, D. C., attorney of record for plaintiff; Webster & Chamberlain, Washington, D. C., of counsel.

Patricia B. Tucker, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

COWEN, Senior Judge:

This case raises the issue whether the last sentence of 26 U.S.C. § 2055(e)(3) (Supp. V. 1975) violates the equal protection clause of the 14th Amendment as included in the Fifth Amendment's due process clause.[1] The sentence in question will not permit interest to be paid to a taxpayer until 180 days after he has filed a claim for refund, if the refund is made possible by the reformation of a trust pursuant to section 2055(e)(3) for the purpose of permitting a charitable deduction in accordance with section 2055(e)(2)(A). We hold that the provision in issue withstands plaintiff's constitutional attack.

The case comes before us on cross-motions for summary judgment and the facts are not in dispute. Plaintiff is the executor of the estate of Bertha Chambers. Mrs. Chambers died on September 29, 1973, and left a will which was admitted to probate in Oregon. Under the terms of the will a charitable trust was to be established with the sister of the decedent and two charities designated as income beneficiaries and one of these charities designated as residual beneficiary. Under the will as written, the bequests to the charities could not be deducted from the gross estate as charitable contributions, because the trust was not a qualifying charitable remainder annuity trust, unitrust, or pooled income fund as required for charitable remainder deductions by 26 U.S.C. § 2055(e)(2)(A).[2] Therefore, after receiving extensions of 12 months within which to pay the estate tax due, plaintiff paid $583,401.40 in tax and $34,868.22 in 12-month assessed interest to the Internal Revenue Service (IRS).

In 1974, however, Congress enacted 26 U.S.C. § 2055(e)(3) which, in the case of wills executed before September 21, 1974, creating charitable remainder interests unqualified for deductions under section 2055(e)(2)(A), permitted reformation of these wills to meet the requirements of that section. In accordance with section 2055(e)(3), plaintiff obtained a reformation of the trust provisions in Mrs. Chambers' will so that the bequests to the charities would be deductible in computing the Federal estate tax due. Plaintiff and the IRS agreed that the refund of tax due as a consequence of the reformation of the trust and resultant increase in allowable deductions was $229,079.[3]

What plaintiff contests in this court is the constitutionality of the last sentence of section 2055(e)(3) on which the IRS relied to deny plaintiff interest on its $229,079 overpayment for the first 180 days after plaintiff filed its claim for refund. The sentence provides:

\* \* \* In the case of a credit or refund as a result of an amendment or conformation made pursuant to this paragraph, no interest shall be allowed for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed.

---

1. The inclusion of the equal protection clause in the Fifth Amendment is now well settled. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Bruinooge v. United States*, 550 F.2d 624, 213 Ct.Cl. 26 (1977).

2. For a further discussion of this provision and its background, see this court's opinion in *Ellis First Nat'l Bank v. United States*, 550 F.2d 9, 11, 213 Ct.Cl. 44, 48 (1977).

3. In its petition to this court, plaintiff claimed that the IRS, when it agreed to refund $229,079 out of the $583,401.40 tax originally paid, did not agree to refund a correct percentage of the $34,868.22 in interest paid on account of plaintiff's 12-month delay in paying the estate tax due. In its brief and at oral argument, plaintiff has abandoned this claim.

Plaintiff claims that this provision, applicable to wills executed or trusts created before September 21, 1974, and amended by December 31, 1977,[4] is arbitrary and illogical when contrasted with the prior policy of the Department of the Treasury. In 1969, when it enacted section 2055(e)(2)(A), Congress generally allowed a deduction under prior law in the case of wills executed on or before October 9, 1969, or trusts created before that date, if the donor died before October 9, 1972, without having changed such will or trust. Tax Reform Act of 1969, Pub.L. 91–172, § 201(g)(4), 83 Stat. 487. The Treasury Department subsequently issued regulations to minimize the adverse tax impact of section 2055(e)(2)(A) on improperly drawn instruments executed after July 31, 1969, and amended to conform with section 2055(e)(2)(A) on or before December 31, 1972. These regulations provided that unqualified charitable remainders created and reformed to qualify during this period of time would be treated as qualified "for all purposes" from the date of their original creation. Treas.Reg. § 1.664–1(f)(3), 26 C.F.R. § 1.664–1(f)(3) (1973). Thus, just as under present section 2055(e)(3), if estate taxes were overpaid by an estate in this situation, the overpayment would be refunded. The salient factor in the case at bar, however, is that any claims for refund pursuant to these Treasury regulations affecting instruments drawn and reformed between 1969 and 1973 were entitled to interest pursuant to 26 U.S.C. § 6611(a)[5] from the date of overpayment. Therefore, plaintiff contends that the current provision denying this interest for 180 days to estates amending instruments between 1973 and 1977, created a new special class of taxpayers who were denied full recovery of interest on their overpayments, contrary to the 1969–73 policy of the Treasury. Since

plaintiff can perceive no logical reason for this change in policy, it contends the new class of taxpayers has been denied equal protection of the laws.[6]

■ The merits of plaintiff's argument need not detain us unduly. We do not sit as a superlegislature to judge the wisdom or desirability of the challenged provision. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423, 72 S.Ct. 405, 96 L.Ed. 469 (1952). As long as a suspect classification, such as race, or an area of intermediate scrutiny, such as sex, is not involved, the test to be applied to the challenged provision is the following:

* * * the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. * * * (*Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920)).

*Johnson v. Robison*, 415 U.S. 361, 374–75, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Bruinooge v. United States*, 550 F.2d 624, 627, 213 Ct.Cl. 26, 30 (1977); *Fredrick v. United States*, 507 F.2d 1264, 1266, 205 Ct.Cl. 791, 797 (1974). This is the so-called "minimum rationality" or "conceivable basis" standard. The Supreme Court has variously phrased the test as mandating that a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowen v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

4. The reformation provision originally applied only to instruments amended by December 31, 1975. 26 U.S.C. § 2055(e)(3) (Supp. V. 1975). This date was extended to December 31, 1977, by section 1304(a) of the Tax Reform Act of 1976, Pub.L. 94–455, 90 Stat. 1520.

5. The provision reads: "Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual

rate established under section 6621." 26 U.S.C. § 6611(a) (Supp. V. 1975).

6. Plaintiff also claimed in its petition to this court that the interest limitation in section 2055(e)(3) constituted a taking without just compensation in violation of the Fifth Amendment. In its brief, plaintiff has abandoned this claim.

In one case, *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), the Court found an economic regulation to be an arbitrary classification violative of equal protection. An Illinois statute did not permit "currency exchanges" to sell money orders at drug stores or grocery stores, and yet exempted the American Express Company from the restriction, apparently because the Company was an enterprise of unquestioned solvency and high financial standing. The Supreme Court invalidated this classification as arbitrary in the *Morey* decision, but in a recent case, the Court expressly overruled that decision. In *New Orleans v. Dukes*, 427 U.S. 297, 306, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511 (1976), the Court stated:

> \* \* \* *Morey* was the only case in the last half century to invalidate a wholly economic regulation solely on equal protection grounds, and we are now satisfied that the decision was erroneous. \* \* \*

We are not aware of any Supreme Court decision in recent years holding that a Federal tax regulation subject to a "minimum rationality" test is violative of the equal protection clause.[7] Moreover, the Court's decision in *New Orleans, supra,* seems to clarify that at least with regard to Federal tax regulations and other economic regulations, a Federal court has very little room for disapproval of them if any "state of facts reasonably" justifies them. *Id.*

In fact, as we intimated in our decision in *Bruinooge, supra,* 550 F.2d at 626, 213 Ct.Cl. at 29, when a Federal tax regulation is involved it is possible that the regulation may indeed be arbitrary and still withstand an equal protection challenge. Mr. Justice Brennan, in his recent opinion for the Court in *Commissioner of Internal Revenue v. Kowalski,* —— U.S. ——, ——, 98 S.Ct. 315, 326, 54 L.Ed.2d 252 (1977), remarked:

> \* \* \* arguments of equity have little force in construing the boundaries of exclusions and deductions from income many of which, to be administrable, must be arbitrary. \* \* \*

However, we need not decide this further question, for the interest limitation in issue before this court is rationally justifiable.

■ We will not explore all the reasons the Government advances for justification of the provision in order to reach our decision. We accept the Government's argument that section 2055(e)(3) is a wholly remedial provision, and that the limitation on interest is an appropriate restriction on a grace period provided by Congress for reformation of wills and trust provisions by the estates of those persons who failed to rewrite their wills after 1969 to comply with section 2055(e)(2)(A). The fact that the Treasury Department did not limit the payment of interest in its regulations between 1969–73 does not prevent Congress from imposing an appropriate restriction

---

7. See, e. g., *United States v. Maryland Savings-Share Ins. Corp.,* 400 U.S. 4, 6, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970). Plaintiff, however, in response to a question at oral argument in the case at bar, proffered *WHYY v. Borough of Glassboro,* 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968), as the strongest support for its argument that the tax provision in question before this court violates equal protection. The plaintiff there challenged a New Jersey statute which exempted New Jersey nonprofit corporations from state real and personal property taxes while denying the same benefit to a foreign nonprofit corporation operating in New Jersey. The Court stated, in finding the statute did violate equal protection, that it was following a rule which

> " \* \* \* has consistently held that while a State may impose conditions on the entry of foreign corporations to do business in the State, once it has permitted them to enter,

> 'the adopted corporations are entitled to equal protection with the state's own corporate progeny, at least to the extent that their property is entitled to an equally favorable *ad valorem* tax basis.'" [*Id.* at 119, 89 S.Ct. at 287].

This long-held rule of the Supreme Court, that state taxes which discriminate against an out-of-state transactor in favor of some local interest violate equal protection, is not applicable to the Federal tax regulation challenged at bar. The policy of disallowing discriminatory state taxes is consistent with other Supreme Court rules which prevent burdens on the free flow of interstate commerce. On the other hand, the only policy which applies to the case at hand is the long-held policy, discussed above in the text, against invalidating a Federal tax or other economic regulation as violative of equal protection.

when it enacts a piece of purely remedial legislation in order to benefit a taxpayer or more particularly, a charitable remainder interest designated by the taxpayer.

Plaintiff has attempted by the following arguments to circumvent the long-standing precedent against invalidating on equal protection grounds a Federal tax regulation such as the one in question here. First, plaintiff argues that the interest limitation is irrational, because the purpose of section 2055(e)(3) was to protect charitable beneficiaries of certain unqualified charitable remainder trusts rather than to penalize them by limiting their right to interest. This argument has no merit. There is nothing irrational about a law which provides remedial legislation for charitable beneficiaries, and at the same time limits the expense the Government must undergo in effectuating these benefits.

Second, plaintiff contends the classification in question must further a "legitimate" state purpose, meaning that it is not enough for a court to find *some* rational basis to uphold the classification. Plaintiff cites *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), for this proposition. A careful reading of the *McGinnis* decision, however, reveals the Court's actual ruling that the "appropriate standard" for decision is that the legislative classification in question needs "only *some* rational basis" to be sustained. (emphasis added) *Id.*

Third, plaintiff again cites *McGinnis* for the proposition that the rational basis on which the classification is upheld must be "articulated." Plaintiff intimates that unless the rational basis is articulated in the legislative history of the statute itself, the challenged provision cannot meet constitutional muster. This has never been the holding of the Supreme Court, and it is not the holding of *McGinnis*. The *McGinnis* decision itself appears to rely mainly on

rational bases enunciated by the state in its brief and at oral argument, not on the legislative history of the classification in question there. *Id.* In the absence of legislative history, the methodology which this court recently used in determining whether a challenged provision such as the one here violates equal protection is set out in *Bruinooge,* 550 F.2d at 627, 213 Ct.Cl. at 31: " * * * we try to divine what Congress left unstated [and] we resort to our own talents and those of counsel to discern" the rationality of the classification in question.

As we have shown, the law in the challenged area of equal protection analysis has been well-settled for many years now.[8] Therefore, for the reasons set out in our opinion above, the Government's motion for summary judgment is granted, ·and the plaintiff's petition is dismissed.

---

8. In a recent action involving this identical issue in the United States District Court for the District of New Hampshire, Judge Bownes saw so little merit in the plaintiff's contentions that he dismissed them with one sentence:

" * * * The provision to the extent that it sets up a separate class is reasonable and must be considered together with the special deduction which it created." *Merchants Nat'l Bank v. United States,* Civil Action No. 76–275 (Nov. 29, 1977).