**BURKE MOUNTAIN ACADEMY, INC.,**
**Appellant-Plaintiff,**

v.

**UNITED STATES of America,**
**Appellee-Defendant.**

**No. 1038, Docket 83–6013.**

United States Court of Appeals,
Second Circuit.

Argued April 13, 1983.
Decided Aug. 22, 1983.

Harriet Ann King, Waitsfield, Vt., for appellant-plaintiff.

James F. Miller, Dept. of Justice, Washington, D.C., with whom were Glenn L. Archer, Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, and James F. Miller, Washington, D.C. (George W.F. Cook, U.S. Atty., Rutland, Vt., of counsel), on brief, for appellee-defendant.

Before VAN GRAAFEILAND, Circuit Judge, MANSFIELD, Senior Circuit Judge, and FRIEDMAN, Circuit Judge.*

FRIEDMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Vermont, denying a claim for refund of social security taxes. The refund was sought on the ground that the statute under which the taxes were assessed, subsection 3121(k)(4) of the Internal Revenue Code of 1954 ("Code" or "I.R.C."), 26 U.S.C. § 3121(k)(4) (Supp. V 1981), is unconstitutional as applied to the appellant under the Due Process and Equal Protection requirements of the fifth amendment. The district court upheld the constitutionality of the provision. We affirm.

## I.

A. For a number of years organizations that qualified as exempt from federal income taxes under subsections 501(a) and (c)(3) of the Code, such as educational and charitable organizations, also were exempt from the requirement under the Federal Insurance Contributions Act that they pay social security taxes on their employees' wages and withhold from those wages the employees' share of those taxes. Exempt organizations could bring themselves and their employees under the coverage of the Social Security system by filing with the Internal Revenue Service ("Service") a waiver of their statutory exemption. I.R.C. § 3121(k)(1)(A). A substantial number of exempt organizations paid social security taxes on their employees and withheld the employees' share of taxes without having filed a waiver of their exemption. Such payment and withholding gave the employees credit toward their social security coverage.

The General Accounting Office made a study of the situation and submitted a report to the Congress which pointed out that "in 1975 around 13,000 to 20,000 non-profit organizations that had not filed a waiver certificate were paying social security taxes ranging from around $118 million to $369 million." H.R.Rep. No. 1711, 94th Cong., 2d Sess., p. 2, reprinted in 1976 U.S.Code Cong. & Ad.News 5929, 5930. The report estimated that if all these exempt organizations and their employees sought refunds, the social security trust fund might be required to pay out as much as $1 billion, and that even if the organizations themselves did not seek refunds, the number of employees who the report estimated were likely to seek such refunds would require the fund to pay out as much as $600 million. Id.

* United States Court of Appeals for the Federal Circuit, sitting by designation.

The congressional response to the report was the enactment of subsection 3121(k)(4) of the Code, the provision involved in this case. Pub.L. No. 94–563, 90 Stat. 2655 (1976) (codified at I.R.C. § 3121(k)(4), 26 U.S.C. § 3121(k)(4) (Supp. V 1981)). It provides that an exempt organization that had paid social security taxes "during any period ... of not less than three consecutive calendar quarters" was "deemed ... to have filed a valid waiver certificate ... on the first day of ... [such] period ... effective ... on the first day of the calendar quarter in which such period began...." The constructive waiver was inapplicable, however, where "a refund or credit of any part of the taxes which were paid" during those three consecutive quarters had "been obtained by the organization or its employees prior to September 9, 1976." The Act was effective October 19, 1976.

The effect of these provisions was that exempt organizations that had paid social security taxes without having filed exemption certificates and that had not received refunds of those taxes prior to September 9, 1976, (1) could not obtain refunds of those taxes after that date, and (2) would be subject to payment and withholding of future social security taxes, with respect to which they were "deemed" to have filed exemption certificates.

Subsection k(1)(D) permits exempt organizations to withdraw their waivers of exemption after the waivers have been in effect for eight years by giving the Service two years' advance notice of the withdrawal and attaching the written consent of those employees who wish to terminate their social security coverage.

B. The appellant, Burke Mountain Academy, Inc. ("Burke Mountain"), is a small college-preparatory school located in Vermont. The school does not have any pension or retirement plan. Burke Mountain is a qualified nonprofit educational organization under subsection 501(c)(3) of the Code, and thus is exempt from federal income and, absent the enactment of the provision at issue here, would be exempt from social security taxes.

Since its organization in 1971, until the middle of 1976, Burke Mountain paid and withheld social security taxes on its employees' wages, apparently under the erroneous assumption it was required to do so. In 1976, the headmaster and president of Burke Mountain learned that the school was not required to pay social security taxes unless it had filed a waiver of exemption certificate. He wrote the Service inquiring whether the school had filed a waiver and stating that it would like a refund of the social security taxes it had paid for its employees.

On August 16, 1976, the Service informed Burke Mountain that the school had not filed a waiver and that to obtain a refund the school must file a formal application therefor. Burke Mountain paid no social security taxes subsequent to the second quarter of 1976 (except for the third quarter of 1977, as explained below).

On September 17, 1976, Burke Mountain filed a refund claim. On November 19, 1976, the Service paid Burke Mountain a refund of its social security taxes from the quarter beginning October 1, 1973 (the earliest period for which a refund was available under the applicable three-year statute of limitations) through June 30, 1976 (the last quarter for which the taxes had been paid).

Following an audit of Burke Mountain in 1979, the Service assessed social security taxes for the third quarter of 1977, totaling $1,978.30 (including interest and penalty). After paying the tax, Burke Mountain filed a claim for refund, which the Service denied. Burke Mountain then filed the present refund suit in the district court. It contended that as applied to it, subsection (k)(4) was unconstitutional to the extent it required Burke Mountain to pay social security taxes in the future based on the constructive waiver certificate that the school was deemed to have filed by virtue of its payment of social security taxes for three consecutive quarters.

The district court upheld the constitutionality of the tax. It ruled that, contrary to Burke Mountain's contention, the retroac-

tive application of the tax on the basis of Burke Mountain's prior payments was not harsh or oppressive.

## II.

Burke Mountain first contends that the application of the statute denied it due process because it is a "harsh and oppressive" retrospective application that subjects the school to future taxes because of its past erroneous payments.

It is far from clear that a statute that imposes future tax liability on the basis of events that occurred before the effective date of statute operates retroactively. "A statute is not retroactive merely because it draws upon antecedent facts for its operation." *Lewis v. Fidelity & Deposit Co.,* 292 U.S. 559, 571, 54 S.Ct. 848, 853, 78 L.Ed. 1425 (1934). *See Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922); *Nield v. Dist. of Columbia,* 110 F.2d 246, 254–55 (D.C.Cir.1940). In any event, to the extent that this application of the statute to Burke Mountain is retrospective, such application does not deny the school due process.

■ The retrospective application of a tax statute violates due process only if, in view of the "nature of the tax and the circumstances in which it is laid," the application is "harsh and oppressive." *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938).

In *Hospital.Data Center of S.C. v. United States,* 634 F.2d 541, 225 Ct.Cl. 158 (1980), the Court of Claims upheld against a similar constitutional challenge the provision in subsection (k)(4) that barred an exempt organization that had paid social security taxes without filing a waiver from obtaining a refund of the taxes if the organization had not received a refund or credit of those taxes prior to September 9, 1976. In holding that such retroactive application of the tax was not "unfair, harsh or oppressive" (*id.* at 545), the court stated (*id.* at 544, footnote omitted):

Plaintiff and many others like it had paid the tax, although they had not filed waivers or lists, and were therefore entitled to refunds. What Congress did was to take away from these taxpayers their then right to a refund which existed because of their failure to file the waivers and lists. In effect, Congress retrospectively determined that, for those who had voluntarily paid the tax, waivers and lists were unnecessary—having chosen to pay the tax, the organizations should be held to their original choice, and could not later change their minds. This was no invasion of a "fundamental" right expressly protected by the Constitution, but the giving effect by Congress to the undeniable fact that the tax had actually been paid.

■ This reasoning, with which we agree, is equally applicable to the alleged retrospective application of the tax to Burke Mountain and requires rejection of Burke Mountain's challenge to the statute. Burke Mountain voluntarily, although erroneously, paid social security taxes on its employees' wages and thereby created for them the anticipated likelihood that they could qualify for and receive social security benefits. Although *Hospital Data Center* dealt with the recovery of taxes paid before the effective date of the 1976 statute, and the present case involves liability for taxes incurred after that date, this is not a justifiable basis for distinguishing *Hospital Data Center* or making its reasoning inapplicable here. Indeed, the future impact of the statute is ameliorated by the ability of Burke Mountain to withdraw its waiver of exemption after ten years (see supra, page 781)—the precise period required in order for its employees to obtain full coverage under the social security program. 42 U.S.C. § 414(a)(2) (1976).

Here, as in *Hospital Data Center,* "[i]t does not seem to us unfair, harsh, or oppressive to balance the equities in this way against organizations which had been actually paying the tax without duress." 634 F.2d at 545, footnote omitted.

## III.

Burke Mountain argues that the application of subsection (k)(4) to it denied it equal

protection. It contends that it was arbitrary for Congress to require it to pay future social security taxes because it erroneously had paid past taxes.

■ A. In evaluating an equal protection argument, the governing standard is whether "there is a rational relationship between the criteria set forth in the statutory mandate and a legitimate congressional purpose." *Sakol v. Commissioner,* 574 F.2d 694, 698 (2d Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 168 (1978). *See also San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 40–41, 93 S.Ct. 1278, 1300–1301, 36 L.Ed.2d 342 (1973); *United States v. Maryland Savings-Share Ins. Corp.,* 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970); *Orzechowski v. Commissioner,* 592 F.2d 677 (2d Cir.1979); *Di Portanova v. United States,* 690 F.2d 169, 180 (Ct.Cl. 1982); *Kellems v. Commissioner,* 58 T.C. 556, 558 (1972), *aff'd per curiam,* 474 F.2d 1399 (2d Cir.), *cert. denied,* 414 U.S. 831, 94 S.Ct. 63, 38 L.Ed.2d 66 (1973).

The rational basis need not be stated in the statute or its legislative history; it is enough that the court can discern a reasonable justification for the statutory distinction. "Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them." *McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969); *see also McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

In accordance with this principle, this court has upheld legislation challenged under the Equal Protection clause based upon rational bases not expressed in the legislative history that the court was nonetheless able to discover. *See, e.g., Buffalo Teachers Fed'n v. Helsby,* 676 F.2d 28, 30 (2d Cir.1982); *Haag v. Ward,* 632 F.2d 206, 208 (2d Cir.1980); *Clayborne v. Califano,* 603 F.2d 372 (2d Cir.1979). It is our job to " 'try to divine what Congress left unstated

[and] we resort to our own talents and those of counsel to discern' the rationality of the classification in question." *First Nat'l Bank of Ore. v. United States,* 571 F.2d 21, 25, 215 Ct.Cl. 609 (*quoting Bruinooge v. United States,* 550 F.2d 624, 627, 213 Ct.Cl. 26 (1977)), *cert. denied,* 439 U.S. 827, 99 S.Ct. 100, 58 L.Ed.2d 120 (1978).

■ Moreover, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). *See also Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973); *United States v. Kiffer,* 477 F.2d 349, 352 (2d Cir.), *cert. denied,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973). This burden is particularly heavy when the challenged legislation is a tax statute. "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Taxation With Representation of Washington,* —— U.S. —— at ——, 103 S.Ct. 1997 at 2002, 76 L.Ed.2d 129 (1983). As the Court of Claims pointed out in *First National Bank of Oregon,* 571 F.2d at 24: "We are not aware of any Supreme Court decision in recent years holding that a Federal Tax regulation subject to a 'minimum rationality' test is violative of the equal protection clause."

■ B. The legislative history shows that Congress enacted subsection (k)(4) because of two concerns: (1) The substantial drain on the social security trust fund—possibly as much as a billion dollars—that would result if a large number of exempt organizations and their employees obtained refunds of social security taxes that the organizations had paid without filing waivers of exemption; (2) the adverse effect such refunds would have upon the social security coverage of the employees that such payments had created. The House Committee pointed out that "when a refund is made the social security credits earned by an organization's employees during the statute of limitations period are cancelled." H.R.Rep. No. 94–1711, *supra,* at 1–2, U.S.

Code Cong. & Admin.News 1976, p. 5930. The Committee explained that "[t]he purpose of the bill is to validate the social security credits of employees of nonprofit organizations in instances in which a nonprofit organization and its employees had been paying social security taxes without having filed a valid waiver certificate to cover such employees under the social security program." *Id.* at 1, U.S.Code Cong. & Admin. News 1976, p. 5929.

The legislative history thus reflects a congressional concern with maintaining and protecting the social security coverage of employees of exempt organizations that had paid social security taxes but had not filed waivers of exemption. The Committee stated that the constructive waiver provision "would validate the social security coverage of employees of nonprofit organizations that have been erroneously paying social security taxes without filing proper waiver certificates, both before and after enactment, with respect to those organizations that have not received a refund credit of such taxes." *Id.* at 2–3, U.S.Code Cong. & Admin.News 1976, p. 5930. Congress reasonably could have been concerned about protecting employees who had been brought under the social security system through their employing organizations' payment of social security taxes but had not been covered for the 40 quarters necessary to obtain full coverage.

That Congress had this objective in mind is suggested by the provision permitting withdrawal of a waiver of exemption only after it had been in force for ten years—the precise period of payment required for the employees to obtain full coverage. Congress also may have been aware of the seriousness of the problem for employees of small institutions such as Burke Mountain, who have no organizational retirement plan and who may be wholly dependent upon social security for any retirement benefits.

In short, we have no basis for invalidating under the Equal Protection clause the application of this tax statute to Burke Mountain, since "[t]he record is barren of any indication that this apparently reasonable basis does not exist, that the statutory distinctions are invidious." *McGowan v. Maryland,* 366 U.S. at 426, 81 S.Ct. at 1105.

The judgment of the district court is *AFFIRMED.*