Estate of Azalea Smith DOWNS, Abb Howard, Independent Executor

v.

The UNITED STATES.

No. 32–76.

United States Court of Claims.

Oct. 19, 1977.

Barry Bishop, Austin, Tex., for plaintiff. Sander Shapiro, Austin, Tex., attorney of record. Clark, Thomas, Winters & Shapiro and Glen Wilkerson, Austin, Tex., of counsel.

George L. Squires, Washington, D. C., with whom was Acting Asst. Atty. Gen. Myron C. Baum, Washington, D. C., for defendant. Theodore D. Peyser and Robert S. Watkins, Washington, D. C., of counsel.

Before DURFEE, Senior Judge, and NICHOLS and BENNETT, Judges.

NICHOLS, Judge.

In this tax case, both plaintiff and defendant move for summary judgment. We grant defendant's motion.

Plaintiff is the estate of Azalea Smith Downs, whose suit to recover a refund of estate taxes allegedly overpaid requires us to consider the effect of the Powers of Appointment Act of 1951, Pub.L.No. 58, 65 Stat. 91 (1951) (now codified in 26 U.S.C. § 2041), (hereinafter 1951 Act) upon a power of appointment created while the prior law, section 811(f) of the 1939 Internal Revenue Code, as amended by the Acts of October 21, 1942, Pub.L.No. 753, and December 17, 1942, Pub.L.No. 809, 56 Stat. 1054, 77th Cong. (hereafter 1942 Act), was in force. Plaintiff's decedent, Azalea Smith Downs, a longtime Texas resident, died on September 17, 1971, possessing a power created under her husband's will written in November 1947, and probated following his December 30, 1947 death, in early 1948. It bequeathed her all the residue of his estate, "for her sole and exclusive use and benefit for and during her natural life," with full power to "sell, mortgagee, pledge," etc., or "dispose of said property or any part thereof or the proceeds thereof in any manner and upon such terms as she may elect and in her sole discretion, to use and appropriate said property or the proceeds thereof at any time and in any manner she deems convenient for her use * * * " and upon her death the remaindermen (now, no doubt, remainder persons) were to get only what she might have chosen not to appropriate.

That power vested in decedent such broad discretion over her husband's property that the parties agree the power was in the lexicon of the 1951 Act, a "general power of appointment," because it was exercisable in favor of the decedent, her estate, her creditors, or the creditors of her estate. Accordingly, the Commissioner of Internal Revenue included the value of the property held under the power within decedent's gross estate, and computed the estate tax due on that sum. Plaintiff paid the tax so assessed, but has since contended that the property decedent held under her power should not have been included, essentially because, plaintiff declares, the power was excludable from gross estates under the tax law in force at the time decedent inherited the power in 1947, and was not constitutionally made includible thereafter.

The 1942 Act excepted from the definition of taxable "powers of appointment" a power to appoint within a class limited, generally, to the "spouse of the decedent, spouse of the creator of the power, descendants of the decedent or his spouse, descendants (other than the decedent) of the creator of the power or his spouse," and others not here relevant. It is not easy to tell just by reading this language whether or not the Congress intended that the "spouse of the creator of the power" should be able to appoint herself, as the decedent here could, and be within the statutory definition of an excepted power. Treasury Regulation 105 holds that the exceptions stated in the 1942 Act would not embrace a power exercisable by a decedent in her own favor, even though she was, coincidentally, the spouse of the creator of the power. 43 Cum.Bull. 1081, 1088 (1943).

Plaintiff, on the other hand, relies solely on the statute, which contains no such limitation, at least none explicit, and says the regulation is plainly contrary to the statute and invalid. Neither we, nor the parties evidently, have located any court's opinion of the regulation's consistency with the statute. Since the validity of the 1943 regulation apparently was not reviewed while it was contemporary, we are reluctant now that its era has passed to open it to question. We have determined that even if plaintiff is right, the 1951 Act is not vulnerable to constitutional attack by this particular estate at least. We assume, *arguendo*, for purposes of this decision, therefore, that the language of the husband's will would have been effective to avert a second tax under the 1942 Act and that the regulation was not effective to accomplish the contrary.

Plaintiff says the 1951 Act is invalid as retroactive legislation, but appears to concede that such retroactivity would not be unconstitutional in all cases because the statute provides relief to some estates whose decedents timely and effectively renounced their general powers. Property once held under such general powers would not be included after disclaimer or renunciation of the power, valid under state law.

See 26 U.S.C. § 2041 and Treas.Reg. § 20.-2041–3(d). Yet, plaintiff points out that during 1948 and 1949, decedent appointed several items of property under her power for her own benefit, so that, according to plaintiff, decedent could no longer renounce the power under Texas law. From this plaintiff concludes that the 1951 statute is unconstitutionally applied to this estate because Texas law deprived decedent of any opportunity after 1951 to utilize the relief provision which, plaintiff contends, is essential to the statute's constitutionality.

The parties' briefs and argument reflect their thorough disagreement; on virtually each of plaintiff's legal contentions, an issue is joined. Defendant invokes the general rule that the taxable event for applying the federal estate tax is the decedent's death, and the only applicable law is that then in force. Thus, defendant would have us look only to the date of decedent's death, in 1971, and apply section 2041 as the Commissioner did. Defendant's premise is valid, of course, but employing it here seems to beg, rather than answer, plaintiff's constitutional question.

Under our landmark decision in *First National Bank in Dallas v. United States*, 420 F.2d 725, 190 Ct.Cl. 400, *cert. denied*, 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 289 (1970), retroactivity questions cannot be given simplistic answers, but require analysis of the fairness of the provision under all the circumstances. This case is followed in *Purvis v. United States*, 501 F.2d 311 (9th Cir. 1974). Both deal with the retroactive application of the Interest Equalization Tax Act of 1964, Pub.L.No. 88–563, 78 Stat. 809. Both lay great stress on the fact that before engaging in the transactions taxed, the taxpayers had actual notice that President Kennedy had asked Congress to enact the tax and make it retroactive to the date of his request. In line with the importance thus given to notice, we observe that the Texas lawyers who wrote the type of clause here involved may have thought it qualified for exclusion under the 1942 Act, but they could hardly have been unaware that the Internal Revenue Service considered that it

did not. Regulation 105 shows on its face it was approved by the Acting Secretary March 10, 1943, and filed with the Federal Register the next day, giving 3½ years of notice to the date of the will. However right the lawyers may have been, and however confident they were right, they should have anticipated a contest. In the circumstances, it is not unfair to suppose their instructions from their testators preferred the importance of the fullest immediate protection for their widows to be, over the ultimate protection of heirs against double taxation, after the widows had followed their spouses into the grave. Moreover, if it was really as difficult to renounce or disclaim a power of appointment in Texas as alleged, this too should have been a warning signal to any properly advised Texas testator who wanted to create such a power for his future widow. The use of the clause thus is shown to reflect, or at least suggest the predominance of other considerations over the fear of double taxation in testators' minds. However, we are, as shown below, skeptical that Texas law was all that positive.

A reasonable estate planner we believe would have taken Regulation 105 as notice that the Treasury believed the 1942 Act did not exclude powers of the kind involved and should the courts hold otherwise, the Secretary would be before Congress asking for a closing of the loophole. It would have been hard for anyone to believe that certain powers of appointment should be taxed, and the one here involved avoid taxation.

Besides whatever notice the regulation gave, or despite it, Congress thought it also necessary in the 1951 Act to provide an escape hatch by which donees of general powers of appointment, or some of them, whether or not excepted under the 1942 Act, could avert double taxation under the 1951 Act by disclaimer or renunciation.

If Congress provided means of escape for most donees of the 1942–1951 period, but left a few without that possibility, some jurists might deem that those few had a better constitutional case than if Congress had failed to protect anyone. The inquiry we deem decisive is whether, antecedently considered, the unavailability of the escape hatch for Azalea Smith Downs was so obvious that she was excused from even trying to use it. The keystone of plaintiff's argument is that Texas law prevented decedent from renouncing her power after 1951 in order to avail herself of the 1951 statute's relief provision. If plaintiff could demonstrate that this were so, we might agree that plaintiff had raised a substantial constitutional objection, or, at least, clothed herself in equities worthy of special notice.

The parties have researched Texas law thoroughly. There was no statute dealing with renunciation of powers until 1971. The only pre-1951 court decisions cited deal with widely different problems. For example, plaintiff seeks support for her statement of Texas law in *Torno v. Torno*, 43 Tex.Civ.App. 117, 95 S.W. 762 (1906), which lends scant support as we construe it. *Torno* resulted from one legatee's attempt to avoid the distribution of his father's estate by will and to increase his inheritance at the expense of his siblings. The legatee had permitted his gift of real property to be sold in satisfaction of a debt owed to creditors, although immediately before suit the legatee repurchased the property intending to renounce his right to it under the will. On these facts, readers are hardly astonished to learn that the court spurned the legatee's attempt to take both against the will and under it. The court held:

> * * * [I]n purchasing the land from the interveners [the creditors], plaintiff recognized their title thereto and thereby accepted under his father's will, and is estopped from asserting any claim to the remainder [of the estate] * * *. [O]ne who takes property under a will cannot claim adversely to the provisions of such will other property therein devised to another. [95 S.W. at 763.]

*Torno*, however, does not establish plaintiff's proposition that one who accepts a legacy is automatically disabled from disclaiming any part of it. To the contrary, we might infer from the Texas court's willingness to give effect to the legatee's sale

of the property accepted under the will, that the court would have also permitted the legatee to disclaim the gift gratuitously.

The most important and most relevant case for our purposes came down only in 1968, *First City National Bank of Houston v. Toombs*, 431 S.W.2d 404 (Tex.Civ.App.), after decedent's time to effect a renunciation had all but expired. It is not evidence of what she would have faced in 1951. In general, it holds that beneficiaries can renounce life estates willed to them, income from a trust, although they have accepted specific cash legacies. The court relies on the fact that the latter are separate from the former in the structure of the will. (It seems clear that our decedent's hypothetical renunciation would have applied to a single clause under which she had already exercised some powers.) A concurring judge indicates that, in his opinion, the distinction between renunciation of combined and separate gifts is sterile and slippery, productive of "nice" differentiations rather than practical benefit. Before us, defendant relies on the practical tolerance toward a partial renunciation, while plaintiff, naturally, stresses the conceptual separateness of the renounced and the accepted legacies. The meaning of the decision to us is the fluid state of the Texas law that it reveals as of as late as 1968, and the paucity of Texas authority to be discussed except that which deals with wholly unlike situations. The court finds a lack of guidance by Texas decisions and refers to a split of authority in other jurisdictions, whether benefits under the same will can be accepted in part, renounced in part, and makes its choice of what it deems the right rule. It would be reasonable to expect that state courts would be highly sympathetic to neutralizing anything alleged to be in the law which, in effect, would expose their residents to discriminatory double Federal taxation that residents of other states escaped. The words of the court in 1968, and dealing with a different problem, therefore leaves to speculation what the fate of a declaratory judgment petition in 1951 by Azalea Smith Downs would have been. It would be natural to expect donees of powers to try what

they could do under existing law. There is no record indicating that our decedent ever did so, nor does any reported decision indicate that anyone else did despite the alleged common use of the clause involved.

■ In this circumstance, it would seem that no reasonably competent Texas lawyer, consulted after 1951 by our decedent, should have advised that to attempt a partial renunciation would be hopeless. He would have been aware that probate judges are not in the habit of freezing previously fluid law in a manner to cause hardship to devisees and frustrate testators' intentions. We may take judicial notice: what judges say the law is largely is influenced by the nature of the controversies put before them for adjudication.

Texas statute law did not deal with renunciation until 1971. Then the legislature adopted section 37A of the Probate Code, 62d Leg. p. 2954, Ch. 979, § 1, effective August 30, 1971. Azalea Smith Downs died only 18 days later, too late to invoke the procedure prescribed thereunder. The parties have much debated this statute, but it is of remote relevance, if any. It allows partial disclaimers, provided it is not a matter of accepting benefits and disclaiming burdens and provided the disclaiming party has not taken possession or exercised control over the property. The legislature may have supposed that 1971 being 20 years after 1951, no powers of decedent's type remained to renounce. If decedent had been going to disclaim, obviously she should have done it long before 1971. If she had done it only within three years of death, it would have been presumed, absent a showing to the contrary, to have been done in expectation of death. Internal Revenue Code of 1954, section 2035.

If decedent were shown to have approached the legislature or instituted court proceedings (perhaps a declaratory judgment action as in *Toombs, supra*), to establish her right to renounce within any reasonable time after 1951, and without success, or if she had even consulted counsel and been advised to abstain from such pro-

ceedings because they would have been futile, we would have an entirely different case. Then it might be persuasively urged that the congressional escape hatch furnished illusory escape for her and her estate. As things were, if she preferred to retain during her lifetime the powers her husband had wanted her to have while she needed them, instead of surrendering them early to shelter others from taxation after she was gone, she would have been perfectly logical, perfectly human, and perfectly within her rights. Her representatives cannot persuasively urge now that she was prevented from doing something she never wanted to do so far as any showing has been made.

■ We think that to accuse Congress of passing retroactive legislation here, it would be necessary to show that it locked her into a situation created between 1942 and 1952, without the possibility of escape, giving that situation tax consequences not intended or foreseen when it was created. It has not been shown that, as of 1951, it would have been hopeless for her to attempt escape. It has not been shown she wanted to escape. In such circumstances, whatever wrong Congress may have done to others, it did none to her. We cannot hold an Act of Congress unconstitutional on the basis of mere speculation as to what the Texas courts would have done in 1952, in a matter not governed by statute, nor by any reported, precedential decision, and in a case the decedent did not choose to bring. If the case law had been hopelessly adverse, which it was not, we question if Congress might not have been reasonable in anticipating state legislation to conform to its own, *i. e.*, to permit a disclaimer that Congress would accept as sufficient. It is common knowledge that state legislators often do alter state laws to enhance the advantages state residents can enjoy under Federal law. If the Texas legislators did not act, it may have been only because no one asked them to. *Vigilantibus, non dormientibus, leges servient.*

At any rate, plaintiff now imputes to Congress a failure to accord due process or equal protection to a decedent estate, although the state legislature and state courts had a last clear chance for 20 years to avert harm to the estate, if the decedent had only asked for it, which she never did so far as we are told.

Accordingly, we decline to hold the statute unconstitutional, *per se*, or as applied in this case. We determine, therefore, that the plaintiff is not entitled to recover. Plaintiff's motion for summary judgment is denied, the defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.