## HOSPITAL DATA CENTER OF S. C., INC.

v.

## The UNITED STATES.

### No. 610–77.

United States Court of Claims.

Sept. 10, 1980.

William McB. Wood, Grier, S. C., attorney of record, for plaintiff; James L. Underwood, Columbia, S. C., and Edwards, Wood, Duggan & Reese, Grier, S. C., of counsel.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen., M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before DAVIS, Judge, SKELTON, Senior Judge and NICHOLS, Judge.

## ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge.

This case has to do with a 1976 statute, Pub.L. 94–563, 90 Stat. 2655, 26 U.S.C. § 3121(k)(4) (1976), validating retroactively the payment by a non–profit organization of social security taxes for 1974–1976. Plaintiff, Hospital Data Center of S.C., Inc., is a non–profit computer service center owned by six county hospitals in South Carolina. It has been exempt from federal income tax under section 501(a), (c)(3) and (e) of the Internal Revenue Code of 1954, as a designated cooperative hospital service organization, and was also able to claim ex-

emption from social security taxes. Nevertheless, taxpayer filed Employer's Quarterly Federal Tax Returns for the period from the second quarter of 1974 through the second quarter of 1976, and also paid over for that period its employees' FICA (Federal Insurance Contributions Act) taxes as well as its own FICA taxes. Before enactment of Pub.L.No. 94–563, *supra*, plaintiff was not required to pay these social security taxes unless it formally waived its tax exemption. However, taxpayer did not at the time file with the Internal Revenue Service such a waiver of its tax exempt status, nor did it file the required list of employees concurring in such a waiver (which was also necessary if tax was not to be imposed on the employees). Despite the fact that it was not legally liable for the taxes, plaintiff paid them, it is said because of inadvertence or mismanagement.

Taxpayer has brought this suit to recover the FICA taxes paid on its own behalf (the employees' share of the taxes was not included in the petition).[1] Its efforts to obtain refunds of the FICA taxes for the nine quarters from the second quarter of 1974 through the second quarter of 1976 have been thwarted by Pub.L.No. 94–563, which became law in October 1976 and made plaintiff liable for those taxes. Taxpayer's sole contention is that the statute is improperly retroactive as applied to its social security taxes through the second quarter of 1976.[2]

Pub.L.No. 94–563 provided that taxpayers like plaintiff should be deemed to have filed a waiver certificate. The statute added a new section 3121(k)(4) to the Revenue Code which (with 1977 amendments) provided that where a tax exempt organization—

(1) had not filed a waiver as of October 19, 1976 (the date of enactment of Pub. L.No. 94–563),

(2) but had paid over social security taxes for a minimum of three consecutive quarters, with the last quarter being the third quarter of 1973 or a subsequent designated quarter, and

(3) had not received a refund or credit of any of the taxes paid after the third quarter of 1973, prior to September 9, 1976, nor had its employees received such a refund, then the tax exempt organization is to be deemed to have filed a waiver certificate and the pertinent employee information on the first day of the quarter for which the organization started paying the tax.

The result for plaintiff is that, by statute, it had in effect filed a waiver and given its list of concurring employees for the whole period for which taxpayer now seeks a refund. Admittedly, as we have said, plaintiff cannot recover if the statute is valid because the Act made it taxable on social security taxes for the period for which it sues.

The reasons for Pub.L.No. 94–563, and for its obvious retroactivity, became clear from its background and history. The first thing to note is that the imposition of social security taxes on non–profit organizations and their employees has long been troubling, and has led to rather frequent statutory changes. In 1950 the Senate favored compulsory taxation of non–profit organizations and their workers, except for religious organizations, S.Rep.No. 1669, 81st Cong., 2d Sess., 6, 15–16, 138–39 (1950), 1950–2 Cum.Bull. 302, 303, 308–09, 342, while the House of Representatives sought compulsory taxation of the employee and voluntary taxation of the non–profit employer. H.R.Rep.No. 1300, 81st Cong., 1st Sess., 12 (1949), 1950–2 Cum.Bull. 255, 260. The then statute compromised by extending initial coverage and concomitant taxation so long as the organization consented and two–thirds of the employees agreed. Social Security Act Amendments of 1950, § 204(a)(9)(B), 64 Stat. 477, 531, amending section 1426(b)(9)(B) of the Internal Revenue Code of 1939. In 1958, Congress modi-

---

1. Plaintiff's refund claims were filed on June 30, 1977, and were administratively denied later in that year. Suit was brought here on December 30, 1977. Taxpayer concedes that its refund claim for the first quarter of 1974 was not filed in time. *See* note 18, *infra*.

2. The case comes before us on cross–motions for summary judgment.

fied the two–thirds requirement by splitting the organization's employees into two groups–the first where the workers were already covered by a retirement system and the second where they were not. Social Security Amendments of 1958, § 405(a), 72 Stat. 1013, 1044–45, adding section 3121(k)(1)(E) to the 1954 Code. At the same time Congress enacted a waiver certificate system to be effective twenty quarters retrospectively. *Id.* In 1960 Congress removed the requirement of consent of two–thirds of the workers. Social Security Amendments of 1960, § 105(a), 74 Stat. 924, 942, amending section 3121(k)(1)(A) of the 1954 Code.

It has some importance for this case that this 1960 legislation also dealt with cases like the present in which the excise taxes were paid over by the non–profit organization but it failed to file a waiver certificate or the employees' signature list, or where an employee had not signed the employees list. *Id.* at 943–44, § 105(b). Responding to its recognition of the fact that many non-profit organizations had paid and remitted the social security taxes but had failed to file the appropriate waiver or signature list and that employees had not adhered to the list, Congress allowed retrospective coverage so long as the employee made a request for coverage and the employer filed a waiver certificate.[3] *Id.*

Similarly, the 1976 legislation at issue here (Pub.L.No. 94–563, *supra*) was Congress's response to a special situation comparable to that in 1960, only much worse. For whatever reason a considerable number

of non–profit organizations had been paying social security taxes without filing the required waivers–ranging in amount from $118 million to $369 million–and many employees of these entities considered that they were covered by social security (even though in fact the taxes could be refunded, and coverage removed or lessened, because of the incorrect payment). The IRS considered that it had a duty to notify the organizations and the employees of this situation–and to pay refunds if asked to do so. The estimated drain on the social security funds could be from over 100 million to perhaps one billion dollars. In addition, if the organizations refused to be covered, a number of their employees then receiving benefits would lose their present entitlement, and a great number of others would lose their coverage and expectancy of future benefits.[4]

These are by no means trivial spurs toward acting to protect both the social security funds and a considerable number of employees of non–profit organizations.[5] Added to these components was the undeniable fact that a very large number of organizations had voluntarily elected to pay the taxes without compulsion, and that their non–liability for the taxes which they had paid was their own failure, neglect or refusal to file the necessary waivers and lists.[6] There was an emergency of sorts, created by these paying but exempt organizations, combined with the great likelihood that they would now seek refunds.[7] Congress was not acting to collect a tax from persons who at all previous times considered themselves free from it; rather it

3. H.R.Rep.No. 1799, 86th Cong., 2d Sess., 20–21, 79–80 (1960)–2 Cum.Bull. 763, 766–67, 781; S.Rep.No. 1856, 86th Cong., 2d Sess., 23–24, 68–69 (1960), 1960–2 Cum.Bull. 792, 794, 800–01.

4. *See* H.R.Rep.No. 1711, 94th Cong., 2d Sess. (1976), 1976–2 Cum.Bull. 561, 561–64; 122 Cong.Rec. 34101–04 (1976). There was no Senate Report.

5. The author of the House bill, then Cong. Mikva, said on the floor of the House: "This bill is intended to correct a situation that has developed that could both penalize a great many senior citizens who are expecting social

security coverage, as well as be a drain on the social security funds." 122 Cong.Rec. 34101.

6. It was stated in the House Report and on the floor of the House, *supra*, that the General Accounting Office had estimated that around 13,000 to 20,000 non–profit organizations had been paying social security taxes without filing the necessary waiver and lists. 1976–2 Cum. Bull. at 561; 122 Cong.Rec. 34102.

7. Congressman Ullman, chairman of the House Ways and Means Committee, referred, during the debate, to the bill as "an emergency measure." 122 Cong.Rec. 34102.

sought to validate the payment of a tax already made and deposited by taxpayers in the Treasury.

Still another element was the long–standing and frequent changeability of Congress's attitude toward the payment of social security taxes by non–profit organizations–a fact of life which should have been known to this plaintiff as well as to its peers. Comparably to the income tax, the imposition of social security taxes on exempt non–profit organizations (and their employees) had been for some time subject to rather frequent reconsideration and change in Congress.[8]

■ We must apply, to this situation, a general standard of all–around fairness when we decide whether Congress could or could not act retroactively. There is no direct constitutional prohibition against retroactive or retrospective civil tax legislation.[9] The guiding principle, stemming from the due process clause, is that retroactive application is forbidden only where it is "harsh and oppressive," considering the "nature of the tax and the circumstances in which it is laid * * *." *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938). Recently we said, in the same vein, that "retroactivity questions cannot be given simplistic answers, but require analysis of the fairness of the provision under all the circumstances." *Estate of Downs v.* *United States*, 215 Ct.Cl. 44, 48, 564 F.2d 48, 50 (1977).[10]

■ Here, we cannot say that constitutional fairness was violated in 1976 by Pub. L.No. 94–563. Plaintiff and many others like it had paid the tax, although they had not filed waivers or lists, and were therefore entitled to refunds. What Congress did was to take away from these taxpayers their then right to a refund which existed because of their failure to file the waivers and lists. In effect, Congress retrospectively determined that, for those who had voluntarily paid the tax, waivers and lists were unnecessary–having chosen to pay the tax, the organizations should be held to their original choice, and could not later change their minds.[11] This was no invasion of a "fundamental" right expressly protected by the Constitution, but the giving effect by Congress to the undeniable fact that the tax had actually been paid. It had the merit, moreover, that, while taking comparatively little from the organizations,[12] the statute saved a multitude of workers from losing coverage (including some who were already receiving social security benefits) and prevented a large drain on the social security fund, a drain which Congress was, probably even then, not sure was warranted.[13] This was all done in a relatively fluid tax situation in which there had been over the years recurring changes in the imposi-

---

8. Is was also stated in the House discussion that the proposers of the bill had consulted with 30 to 40 of the largest non–profit groups in the country, and that the bill had the support of the non–profit organizations as well as of the administration. The speaker (Cong. Ottinger) then said: "To my knowledge not one person or party has come forward to express opposition to the measure." 122 Cong.Rec. 34104.

9. The only specific bar in the Constitution is against *ex post facto* criminal laws. *See* Art. I, § 9, cl. 3; *Kentucky Union Co. v. Kentucky*, 219 U.S. 140, 153, 31 S.Ct. 171, 177, 55 L.Ed. 137 (1911).

10. There has been no governing decision whether the standard determining fairness should be, *e. g.*, normal scrutiny, heightened scrutiny, or strict scrutiny. We think that, as the following discussion shows, this particular

statute passes muster whichever of these or comparable formulations is followed.

11. There might conceivably be some equal protection objections as to the extent of the class which Congress covered, but plaintiff has expressly foregone any classification or equal protection attack on the 1976 Act.

12. It took away the organizations' right to seek a refund on the ground that it had not filed the necessary waiver and list.

13. As of 1982, Congress has made non–profit organizations liable for social security taxes. *See Social Security Amendments of 1977*, 91 Stat. 1509. This had been proposed as early as 1960 by the Department of Labor. *See Proposed Social Security Amendments of 1960: Hearings on H.R. 12580 Before the Senate Comm. on Finance*, 86th Cong., 2d Sess. 107 (1960).

tion of social security taxes on non–profit organizations.

It does not seem to us unfair, harsh, or oppressive to balance the equities in this way against organizations which had been actually paying the tax without duress.[14] If Congress was to accomplish all its purposes, it had to pass such a retroactive measure. We have been pointed to no other feasible way to protect the multitude of workers and the social security funds. *See First Nat'l Bank in Dallas v. United States,* 190 Ct.Cl. 400, 411, 420 F.2d 725, 731, *cert. denied,* 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 289 (1970). Plaintiff derides Congress's choice as one of a mere "policy" shift, but there is no reason why, in a proper case, Congress cannot implement its chosen policy by fair retroactive legislation. In this instance, the problem was real and the legislative policy obviously had much to sustain it.

Taxpayer gives us an intricate list of specific standards for permissible tax retro-activity–all culled from Supreme Court cases upholding or denying tax retroactivity–and then claims that this instance does not meet those criteria. But we have already noted that tax retroactivity is not controlled by precise formulations drawn from the particular facts in the few past decisions which happen to have been decided by the high court. *First Nat'l Bank in Dallas, supra,* 190 Ct.Cl. at 409–10, 420 F.2d at 729–30. We said there:

Quite obviously, the considerations underlying different types of tax statutes are not uniform. Indeed, tax statutes commonly vary with respect to, *inter alia,* their underlying congressional intent, the transactions or interests upon which they are levied, their economic purpose, and perhaps even their social function. * * * We perceive no such rigid standard of constitutionality in the decided cases, nor do we recognize the limitation inherent in the alleged standard.[15] We are guided, rather, by the more flexible criteria delineated by the Supreme Court in *Welch v. Henry, supra,* at page 147, 59 S.Ct. at page 125 * * *. [*Id.* (Footnote added) (citations omitted)].

It does not matter, therefore, that the statute under attack fails to fulfill the very limited standards which taxpayer contends are the only tests. The correct gauge is the broad one established in *Welch v. Henry, supra,* which, as we have held, this statute passes. We would, however, point out that, if some prior notice is necessary, taxpayer should not have been unaware, generally, that changes in the social security position were quite expectable in order to meet changing legislative views and requirements. This was a flexible, not a static, atmosphere. And we think it is much too far–fetched to say that this plaintiff would not have paid the social security taxes in 1974–1976 if it had known that its right to refund would have later been cut off. There is no hint of that position in plaintiff's history of tax–paying; if that had been its stance, it would probably not have paid the tax at all.

■ An alternative argument of taxpayer's is that Pub.L.No. 94–563 creates an irrebuttable presumption of fact which is impermissible under the Fifth Amendment. This is said to be so because the statute says that a non–profit organization meeting the statutory requirements (of having paid the

**14.** Plaintiff seems to complain that the IRS misled it as to Hospital Data's susceptibility to the tax. It is hard to see how this could be so since the Service, on October 13, 1971, expressly ruled in a letter to plaintiff that it was exempt unless it filed a waiver and a list (which it never did). This specific ruling would certainly not be countermanded by the Service's having inadvertently sent the wrong forms to taxpayer. The confusing correspondence in 1976 cannot have been the source of plaintiff's payment of most of the tax (1974–1976), and in any

event was so obviously inconclusive and tentative that no non–negligent taxpayer would consider that it had been told by the IRS to pay the tax. The District Director's letter of May 6, 1970 was plainly a printed form stating merely that the application for exemption had been forwarded to the National Office. Plaintiff cannot properly complain that it was misled.

**15.** Taxpayer in *First National Bank in Dallas* had presented a list of rigid standards, similar to present plaintiff's list.

tax for a designated period of time, without having filed the necessary waiver and list, and without having received a refund or credit) *"shall be deemed * * * to have filed a valid waivers certificate * * * and to have accompanied such certificate with a list [of employees] * * * and each such employee shall be deemed for such purposes to have concurred in the filing of the certificate."* 26 U.S.C. § 3121(k)(4)(A) (emphasis added). Congress's use of "shall be deemed" sticks in taxpayer's craw as an invalid irrebuttable presumption of a fact which is truly rebuttable.

The simplest answer is that the statute does not use "shall be deemed" as a presumption of fact at all. The tax was imposed directly on taxpayer and those like it, even though they had not filed a waiver and list. The expression "shall be deemed" was but an old–fashioned way of Congress's doing just that, and the case would be not a whit different if Congress had, more simply, retrospectively levied the tax in the designated circumstances without there having been any filing of a waiver certificate or list. The same considerations would support retroactively as they do here (and the same arguments could be made against it). Our discussion of the legality of the statute would be the same. The use of "shall be deemed" is a superfluous excrescence which does not alter the impact of the statute, its meaning, or the factors bearing on its validity. Nothing turns on the somewhat stilted mode of legislative phrasing which could easily be eliminated without changing the effect or substance of the statute. Congress stressed and meant to stress, not the fact of a filing of a waiver or the list, but the direct liability of those in plaintiff's situation for social security taxes, regardless of such a filing.[16] This we have upheld above.

■ Finally, although we need not pass on it, we consider (because it affects jurisdiction) and reject defendant's argument that this court lacks jurisdiction because taxpayer has not in this suit sought recovery of the employees' social security taxes for the period at issue.[17] In *Hotel Conquistador, Inc. v. United States*, 220 Ct.Cl. ——, 597 F.2d 1348 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 702, 62 L.Ed.2d 668, we held that an employer who did not timely file refund claims for its employees' taxes (or make a showing that it had reimbursed the employees) was barred from thereafter suing. *Id.* at ——, 597 F.2d at 1354–55. To similar effect is *Atlantic Department Stores v. United States*, 557 F.2d 957 (2d Cir. 1977). The base of those holdings was a set of statutory and regulatory provisions requiring that the employees be included in or covered by the administrative refund claim. But there are no comparable requirements for a court suit. Under existing legislation and regulation, an employer may sue for refund of its own social security taxes. In the absence of a contrary statute or administrative rule like that controlling administrative refunds, we cannot say that we lack jurisdiction over a suit brought by the employer alone for its own taxes.

Except for the jurisdictional point last discussed, plaintiff's motion for summary judgment is denied and defendant's motion is granted. On that jurisdictional point the

---

**16.** Congress made this clear in one part of Pub.L.No. 94–563, 26 U.S.C. § 3121(k)(4)(A)(ii), when it referred to an organization's payment of the social security taxes "as though such a certificate had been filed."

In this respect, both *Heiner v. Donnan*, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), and *Hoeper v. Commissioner*, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931), are different. In both cases the Supreme Court thought that the tax could not be levied directly on the underlying fact–on property or income not belonging to the taxpayer, *Hoeper, supra*, 284 U.S. at 215, 52

S.Ct. at 121, or on gifts made two years before death to be considered as part of the decedent's estate. *Heiner, supra*, 285 U.S. at 330–32, 52 S.Ct. at 362–63. The statutory presumptions were therefore (unlike the present case) necessary presumptions of facts required for taxability. The tax could not be imposed directly.

**17.** Taxpayer admits that, though it sought an administrative refund of both its and its employees' taxes, the petition in this court asked for refund only of the employers' own taxes.

reverse is ordered. The petition is dismissed.[18]

---

**18.** The part of the petition seeking a refund for the first quarter of 1974 is dismissed for lack of jurisdiction, on taxpayer's concession that its refund claim was untimely filed as to that period. *See* note 1, *supra.*