EVANGEL KIDDIE KOLLEGE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 82–0388.

United States District Court, W.D. Virginia, Roanoke Division.

Nov. 2, 1984.

Donald Huffman, Bird, Kinder & Huffman, Roanoke, Va., for plaintiff.

John P. Alderman, U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff Evangel Kiddie Kollege brought this action seeking a refund of one hundred forty-four dollars and seventeen cents ($144.17), which it claims represents an

overpayment of social security taxes made on behalf of an employee for the quarter ending December 31, 1977. Plaintiff alleges that it is a tax-exempt organization pursuant to § 501(c)(3) of the Internal Revenue Code and thus need not pay social security taxes (Complaint, ¶ 14). Plaintiff claims the refund on the basis of § 3121(k)(4) of the Code. Relying on the same subsection, the United States has filed a counterclaim for the balance of social security taxes due for the quarter.

Until enactment of the new subsection (k)(4) in 1976, organizations that were exempt from federal income taxes under subsections 501(a) and (c)(3) of the Code were likewise exempt from social security taxes. These organizations could file waivers of their statutory exemption, thereby ensuring social security coverage for themselves and their employees. 26 U.S.C. § 3121(k)(4)(A). Plaintiff claims to have been among the estimated 13,000 to 20,000 exempt organizations that paid social security taxes without having filed waivers. See H.R.Rep. No. 1711, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5929, 5930.

Congress recognized the possibility that many of those exempt organizations and their employees would seek refund of social security taxes paid without a formal waiver:

The estimated drain on the social security funds could be from over 100 million to perhaps one billion dollars. In addition, if the organizations refused to be covered, a number of their employees then receiving benefits would lose their present entitlement, and a great number of others would lose their coverage and expectancy of future benefits.

*Hospital Data Center of South Carolina v. U.S.* 634 F.2d 541, 543, 225 Ct.Cl. 158 (1980) (footnote omitted). In response to these concerns, Congress enacted subsection (k)(4), deeming certain such employers to have filed waivers.[1]

---

**1.** For a more thorough discussion of the legislative history behind § 3121(k)(4), *see Burke Mountain Academy, Inc. v. U.S.,* 715 F.2d 779

(2d Cir.1983); *Hospital Data Center, supra* at 543. Unlike the plaintiffs in those cases, Evangel Kiddie Kollege requested its tax refund be-

○

For purposes of this case, § 3121(k)(4) treats as waived the exemption of an organization that paid social security taxes without filing a waiver certificate by October 19, 1976, unless "a refund or credit of any part of the taxes.... has been *obtained* by the organization or its employees prior to September 9, 1976." (emphasis added). It is undisputed that plaintiff paid social security taxes from 1973 through the first three months of 1976, (Complaint, ¶ 6), without having formally waived its exemption by October 19, 1976. Nor does the United States deny plaintiff's allegations that on July 26, 1976, it requested from the IRS a refund of all social security taxes paid, (Complaint, ¶ 8), but that such refund was not made until October 11, 1976. (Complaint, ¶ 9).

■ The parties have thus reduced the issue in both claims to the effect had on plaintiff's liability for 1977 social security taxes by (k)(4)'s requirement that the refund have been "obtained" before September 9, 1976: did plaintiff's submitting a refund request before that date satisfy the provision and preclude a statutory waiver of its exemption? Under plaintiff's proffered construction, subsection (k)(4) would treat as obtained a refund received at any time, as long as it had been requested before September 9, 1976. IRS approval of the request would in effect relate back, at the latest, to when the Service received the request. Plaintiff argues that the statute should not operate so as to deprive an organization of its exemption simply because of arbitrary delay by the IRS in acting on a timely refund request.

Though mildly persuasive, this reading ignores the plain language and purpose of subsection (k)(4). Congress' choice of the word "obtained" indicates that the refund must actually have been received by the cutoff date. An exempt organization cannot be said to have obtained its refund by the mere filing of a request. By enacting the disputed provision, Congress sought to protect the social security trust fund and those employees whose coverage was

threatened. In the face of these considerations, plaintiff has adduced no authority supporting its construction of subsection (k)(4), a construction that would in fact frustrate (k)(4)'s very purpose.

■ Plaintiff does allege that it paid social security taxes originally in reliance on erroneous representations by an unknown IRS employee that such payments were required, (Complaint, ¶¶ 5–7); the United States should therefore be estopped from asserting a constructive waiver, plaintiff argues. It is settled law that "[a]n officer or agency of the United States to whom no administrative authority has been delegated cannot estop the United States even by an affirmative undertaking to waive or surrender a public right." *U.S. v. Stewart*, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40 (1940). The Fourth Circuit has enforced this principle in cases where a taxpayer has detrimentally relied on an unauthorized agreement with IRS agents. *See U.S. v. Davenport*, 297 F.2d 284 (4th Cir.1961); *Darling v. Commissioner*, 49 F.2d 111 (4th Cir.1931), *cert. denied*, 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470 (1931). Even assuming *arguendo* that an IRS employee did instruct plaintiff as alleged, such representations were inconsistent with the law and IRS regulations; thus acting beyond the scope of his authority, the agent would not bind the Government. Plaintiff thus cannot estop the IRS from enforcing the constructive waiver, effected by the court's plain reading of § 3121(k)(4). Because the parties dispute none of the facts leading to this conclusion, summary judgment in favor of the United States is appropriate.

fore the cutoff date, established in (k)(4), for

obtaining such refunds.