KASHIWA, Circuit Judge.
 

 This case, on appeal from the United States Claims 'Court
 
 [1]
 
 , raises an issue of first impression for this court. We must decide whether the cost of an educational benefit plan for the children of employees is presently deductible by the employer under section 162 or deductible later under section 404 of the Internal Revenue Code. We hold that section 162 applies.
 

 Appellant, Greensboro Pathology Associates, P.A., is a North Carolina professional corporation formed on July 1,1970. It provides medical services in the field of pathology to the Moses H. Cone Memorial Hospital at Greensboro, North Carolina. Appellant is a cash basis taxpayer that operates for tax purposes on a fiscal year ending June 30. It is the successor to a four-physician partnership that was previously engaged in the same business. The four partners became appellant’s original shareholders, officers and directors.
 

 In May, 1973, one of the shareholders, Dr. McLendon, left his position with the appellant and accepted an appointment as a Professor of Pathology at the University of North Carolina. Subsequently, in late 1973, appellant’s shareholders consulted with the corporation’s counsel and business consultant about instituting a company-wide educational benefit plan. The shareholders were interested in instituting such a plan as a means of attracting and retaining employees of high quality. It was believed such a plan would help make appellant competitive with institutions of higher learning that provided such educational benefits for their employees. The shareholders were advised that in the late 1960’s the Internal
 
 *1198
 
 Revenue Service had issued private letter rulings to several taxpayer-employers who had adopted plans similar to those being considered by appellant. The rulings had indicated that such plans would be considered welfare benefit plans. As a welfare benefit plan, contributions would be presently deductible under section 162 of the Internal Revenue Code. Appellant, however, never applied for its own private letter ruling.
 

 On June 24, 1974, appellant adopted the educational benefit plan at issue in this suit. At that time appellant’s work force was composed of four shareholders, Drs. H.Z. Lund, C.M. Hassell, D.D. Leonard and R.M. Gay, and two other individuals, Dr. H.W. Baird and Mrs. Lara Wible. The educational plan adopted was designed by Mastrom, Inc., a North Carolina corporation that is unrelated to and completely independent of appellant. Mastrom served as the plan’s administrator. A trust was established with the North Carolina National Bank for the receipt and maintenance of the monies necessary to fund the future benefits of the plan. Mastrom served as the trustee.
 

 Under the plan, every employee was eligible for benefits amounting to $4,000 per year for up to four years for each child of his who was between the ages of 18 and 29 and pursuing a course of undergraduate or graduate study at an accredited college or university. Participation in the plan was available to all appellant’s employees without restriction or qualification. Appellant bore the full cost of the plan. At the plan’s inception, eleven children of employees were designated to receive benefits. Of those eleven, nine were those of shareholders, while two were not. At the time of the plan’s adoption, the children of one of the shareholders, Dr. Lund, had already completed their education.
 

 Under the educational benefit plan, the child of an employee is eligible to receive the benefits of the plan without regard to academic achievement or financial need. A child whose parent is presently employed by appellant is eligible under the plan. One whose parent has left the appellant’s employ for retirement or for reasons of disability is also eligible. If a beneficiary’s parent leaves the appellant’s employ for any other reason, however, all benefits under the plan immediately cease. In that circumstance, funds remaining in the account of the departed employee’s child would be applied to the reduction of appellant’s future contributions under the plan.
 

 The plan could be amended or terminated in the discretion of appellant’s board of directors. No portion of the trust corpus, however, could ever revert to or inure to the benefit of appellant or its shareholders.
 

 During the fiscal years ending June 30, 1974, June 30, 1975, and June 30, 1976, appellant made payments to the trustee of the plan’s trust through the plan’s administrator in the amounts of $15,000, $9,739 and $9,739 respectively. Appellant then deducted these amounts as ordinary and necessary business expenses under section 162 of the Internal Revenue Code in its returns for those years. The Internal Revenue Service disallowed these deductions and assessed deficiencies. Appellant subsequently paid the deficiencies, filed a claim for refund which was denied and filed this suit in a timely manner.
 

 Trial Judge Willi held that the payments made by appellant under the educational benefit plan were not presently deductible. He found the plan was really a plan of deferred compensation and the deductibility of its expenses was governed by section 404 of the Internal Revenue Code and not section 162. He reasoned that the benefits received by the recipients of the plan were in the nature of compensation and therefore were to be considered deferred compensation.
 

 I
 

 Section 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162 (1970 and 1976) [all subsequent section references are to the Internal Revenue Code of 1954 as amended], allows deductions for ordinary and necessary business expenses. It provides in pertinent part:
 

 SEC. 162. TRADE OR BUSINESS EXPENSES.
 

 
 *1199
 

 (a) In General.
 
 — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.
 

 Section 404(a), on the other hand, provides in pertinent part:
 

 SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES’ TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.
 

 (a) General Rule.
 
 — If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: ******
 

 (5) Other Plans.
 
 — If the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee.
 

 The Government concedes that the payments made by appellant to the educational benefit plan were ordinary and necessary business expenses. It, however, contends these expenses were paid under a plan that deferred the payment of compensation. The Government therefore contends the deduction of these payments is governed by section 404 and not section 162.
 
 [2]
 
 Under section 404 the payments by the appellant to the trust would first be deductible in the year the payments were made to the beneficiary of the plan.
 

 Treas.Reg. § 1.162-10, first promulgated in 1958 and still in effect today, is the only regulation promulgated that helps delineate the difference between those payments eligible for deduction under section 162 and those under section 404. It provides in pertinent part:
 

 Reg. § 1.162-10 Certain employee benefits.
 

 (a) In general.
 
 — Amounts paid or accrued by a taxpayer on account of injuries received by employees, and lump-sum amounts paid or accrued as compensation for injuries, are proper deductions as ordinary and necessary expenses. Such deductions are limited to the amount not compensated for by insurance or otherwise. Amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan, are deductible under section 162(a) if they are ordinary and necessary expenses of the trade or business. However, except as provided in paragraph (b) of this section, such amounts shall not be deductible under section 162(a) if, under any circumstances, they may be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a). In such an event, the
 
 *1200
 
 extent to which these amounts are deductible from gross income shall be governed by the provisions of section 404 and the regulations issued thereunder.
 

 Thus, this regulation draws a dichotomy between different types of plans that is illustrated by the following chart.
 

 Presently deductible under § 162 v Deductible later under § 404
 

 dismissal wages
 

 unemployment benefits
 

 guaranteed annual wages
 

 vacations
 

 sickness plan
 

 accident plan
 

 hospitalization plan
 

 medical expense plan
 

 recreational plan
 

 welfare or similar benefit plan
 

 stock bonus
 

 pension
 

 annuity
 

 profit sharing
 

 other deferred compensation plan of the type referred to in § 404(a)
 

 This court must decide whether the educational benefit plan in question is a “welfare or similar benefit plan” or a “deferred compensation plan of the type referred to in section 404(a).”
 

 II
 

 The lower court reasoned that any plan providing benefits in the future, like the one in question, with compensatory aspects is a plan of deferred compensation governed by section 404(a) and not section 162.
 
 [3]
 
 We disagree. The lower court’s theory clearly proves too much. All types of fringe benefit plans have elements of compensation. An employer provides those benefits because his employees work for him, as a form of compensation for the work they perform. All the plans specified by § 1.162-10 that fall within section 162 and not section 404(a) contain elements of compensation. This was freely admitted by the government at oral argument. As the tax court has said:
 

 section 404(a) and its predecessors have never been applied to all plans of deferred compensation. The plans described in section 1.162-10, Income Tax Regs, are also plans of deferred compensation. The services which earned an employee that right to receive dismissal wages may be performed in one year, but he may not receive the dismissal wages until many years later. Similarly, the unemployment benefits and accident and health benefits may be paid years after the performance of the services to which they are attributable.
 

 Grant-Jacoby, Inc. v. Commissioner,
 
 73 T.C. 700, 713 (1980).
 

 A study of § 1.162-10 reveals that those plans which fall within the ambit of section 162 have certain characteristics in common that are not present among those plans governed by section 404. There is, however, no single differentiating factor; rather a set of factors must be considered before it may be determined whether a plan falls within section 162 or section 404. We hold the relevant inquiry in this determination includes the following questions:
 

 1. Is this a welfare plan;
 
 i.e.,
 
 one concerned with the well-being of the employees?
 

 2. Are the benefits provided employees based upon the employer’s earnings?
 

 3. Do the benefits increase for those who have been employed longer by the employer?
 

 4. Are benefits provided to all the employees?
 

 5. Are the plan benefits a substitute for salary?
 

 6. Does the plan serve its stated purpose or is it a sham?
 

 7. Does the employer lose control of the funds it gives the plan? Is there any sort of reversion of funds to the employer? Is the plan independently administered?
 

 Where the provision of a plan’s benefits are dependent upon an employee’s length of service or position, the plan’s characteristics are then analogous to those of compensation since amount and type of
 
 *1201
 
 compensation also depend upon these factors. Where a plan’s benefits depend on an employer’s earnings, that is also a form of deferred compensation because it is similar to a profit-sharing plan. In addition, a plan has the appearance of a plan of deferred compensation when someone not eligible for its benefits receives a salary increase instead. On the other hand, the medical and vacation plans specified by regulation are considered welfare benefit plans and their cost is deductible under section 162. These plans are in general instituted to insure the well-being of employees and are provided to all employees. Thus, we hold such characteristics are essential to a finding that a plan is a welfare benefit plan.
 

 Of course, in any instance where a company maintains total control of and retains all rights to the plan’s funds, no deduction is allowed because the company has not in reality spent this money. Similarly, all plans must be closely examined to see that they are in substance what they are claimed to be.
 

 The Government, however, does not take this approach.
 
 [4]
 
 It claims there are only two distinguishing factors that need be considered when determining whether a plan falls within section 162 or section 404:
 

 1. Where the amount of the benefit is large such a benefit cannot be considered a fringe benefit and therefore must be a form of deferred compensation.
 

 2. Where an employee leaves a corporation and as a result loses his benefits, such benefits are a form of deferred compensation.
 

 There are several problems with the Government’s argument. First, there is the question what is a large benefit. This obviously is a question on which no simple line can be drawn. Second, and more importantly, the distinction the Government draws cannot be supported by the regulation. After all, the benefit received under a stock bonus plan, which by statute is a deferred compensation plan, might be much smaller than that received under a medical expense plan. Nor would it make any more sense to look to the amount of the contribution required of the employer. If the Treasury wished to distinguish plans on this basis, it certainly could have drafted its regulation to say this. There is simply no support for this theory.
 

 As to the second factor, most medical benefit plans and many vacation plans, plans governed by section 162, may be lost when an employee leaves an employer. Similarly a pension plan, by statute a plan of deferred compensation, often vests after an employee has worked for a certain number of years even though he may subsequently leave the employer. Thus, this distinction does not differentiate between those plans considered by § 1.162-10 to be governed by section 404 and those governed by section 162. The Government’s argument also is logically flawed. If something is a plan of deferred compensation it should by definition be compensation received in the future for work done in the past. Thus, even if an employee leaves his employer he should receive the benefits of the plan for it is compensation for work that has already been performed. The Government’s distinction therefore serves no purpose.
 

 Ill
 

 The tax court has dealt with this issue on two occasions and the system of analysis it has developed is similar to ours.
 
 Grant-Ja
 
 
 *1202
 

 coby, Inc., supra; Citrus Orthopedic Medical Group v. Commissioner,
 
 72 T.C. 461 (1979). It should be noted, however, that the tax court cases have turned only on one or two factors, whereas we consider several factors.
 
 [5]
 
 Both tax court cases involved educational benefit plans for the children of employees. In
 
 Citrus Orthopedic
 
 the sole shareholders of the corporation retained extensive authority over the plan’s funds. They had the absolute authority to require the trustee of the plan to obtain their written approval before it exercised its powers, to direct the trustee in making investments, and to direct when and to whom the trustee was to pay benefits. In their role as board of directors the two shareholders retained the power to amend and terminate the plan at any time. If the plan failed to fall within section 162, the trust’s earnings and contributions were to revert to the corporation. Otherwise, a termination of the plan could not result in a reversion of trust assets.
 
 Citrus,
 
 72 T.C. at 463. The tax court held that the rights supposedly given the trust’s beneficiaries were illusory. In the alternative it held the plan was
 

 an arrangement by the two sole shareholders and key employees of Citrus to provide funds when needed to discharge their parental responsibility for the college educations of their children — an attempt to defer the receipt and taxation of those funds until they were needed. Such a deferral is “similar” in principle to the permissible section 404(a) plans. In effect, Citrus simply set aside a part of its 1974 and 1975 profits for the later education of the McElwee and Smith children in a manner “similar” to the operation of a profit-sharing plan.
 

 Citrus,
 
 72 T.C. at 468. Thus the tax court, like us, asked whether the plan was a sham and whether the plan had characteristics similar to those of plans clearly governed by section 404.
 

 Similarly in
 
 Grant-Jacoby,
 
 the tax court held an educational benefit plan for children of employees was governed by section 404 rather than section 162 because it had characteristics like those of a profit-sharing plan. There the plan only provided benefits for children of owners. In the years in question, the beneficiaries of the plan owned 100 percent and 90 percent of the stock respectively. The tax court held the plan was therefore similar to a profit sharing plan. In doing so it said:
 

 For the purpose of determining whether the contributions to a plan should be currently deductible under section 162(a) or whether the deduction should be deferred under section 404(a)(5), it is more significant to look to whether the plan benefits employees generally or whether the plan is for the benefit of the owners; when the benefits are restricted to the owners, there is reason for requiring that the deduction be deferred until the distributions are made from the plan.
 

 Grant-Jacoby,
 
 73 T.C. at 715. Thus here the tax court also looked to see whether the plan in question had characteristics of a profit-sharing plan, a plan that is governed by section 404.
 

 IV
 

 An examination of the facts in this case demonstrates appellant’s plan is gov
 
 *1203
 
 erned by section 162 and not section 404. The Government has not made any allegations that this plan is a sham, and we find it provides what it purports to provide, i.e., educational benefits for employees’ children. The Government has not alleged the appellant has retained an inordinate amount of control over the trust’s funds such that the result is an illusory benefit. The plan, unlike that involved in
 
 Citrus,
 
 is independently administered by a trustee whom the appellant does not control. The appellant retains no day-to-day control over the trust funds. The trust’s monies may never revert to or inure to the benefit of the corporation.
 
 [6]
 
 Thus the corporation has actually spent the money it wishes to deduct.
 

 The purpose of the plan, education of the employees’ children, is clearly a purpose concerned with the well-being of the employees and their families. The benefits provided the employees are not based in any way upon the company’s earnings but instead are set. The benefits are available to all employees, not just owners or key employees. For example, at the plan’s inception, eleven children were designated to receive benefits. Of these, nine were those of shareholders while two were not. The receipt of benefits under the plan is in no way linked to salary. This is clear from the fact that Dr. Lund, whose children had completed their education, did not receive plan benefits nor did he receive any extra monetary compensation. Thus, the plan is not a substitute for a salary increase.
 

 After a careful examination of the facts and the relevant factors, we hold the appellant’s educational benefit plan is not a plan of deferred compensation but rather a welfare benefit plan under the standards of Treas.Reg. § 1.162-10. Therefore, the contributions made by appellant to the plan in the years 1974 through 1976 were properly deductible in the returns for those years. The judgment of the Claims Court is reversed and the case is remanded to that court for a determination of the amounts of those deductions and a determination of the resulting tax refund.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Pursuant to order of this court dated October 4, 1982, the Claims Court on October 8, 1982 entered a final judgment in accordance with Judge Willi’s recommended decision of January 18, 1982.
 

 [2]
 

 . Section 404 regulates an employer’s right to deduct contributions that it pays to fund a plan of deferred compensation. In the case of a qualified plan, section 404(a)(1) through (4) permits the employer to deduct the full amount of its contributions when it pays them to fund future benefits. If the plan is nonqualified, the employer receives no deduction until and to the extent that the contributions are includible in the respective gross incomes of the employee-participants. Section 401 enumerates the requirements of a qualified plan. The parties acknowledge that the plan in question does not meet the requirements of section 401. If this plan is found to be one deferring the receipt of compensation, appellant’s deduction rights would be controlled by section 404(a)5 and therefore postponed in time and limited in amount to benefits includible in the gross income of employees participating in the plan.
 

 [3]
 

 . The lower court and the Government cited
 
 Armantrout v. Commissioner,
 
 570 F.2d 210 (7th Cir.1978) for support. That case, however, dealt with the tax consequences to the
 
 employee-recipients
 
 of an educational benefit plan, an issue not presented here.
 
 Armantrout
 
 did not concern nor make any mention of the tax consequences to the employer of the educational plan there in question.
 

 [4]
 

 . The Government has issued only one revenue ruling in this area, Rev.Rul. 75-448, 1975-2 Cum.Bull. 55. The facts in that situation differ from ours. Educational benefits were only available to the children of key employees who had completed at least 12 months of continuous service with the employer. The revenue ruling simply said:
 

 the amounts contributed by X [the employer] to the [educational benefit trust] represent a form of compensation to those employees who are qualified in terms of length of continuous service and amount of annual salary to have their children covered under the Plan. The compensatory character of the contributions is established by the fact that the amounts are contributed on the basis of the parent’s employment and earnings record, rather than on the basis of competitive criteria, such as need, merit or motivation.
 

 Cum.Bull. at 56.
 

 [5]
 

 . The actual test used by the tax court is whether the plan in question is “similar to a stock bonus, pension, profit-sharing, or annuity plan.” This test was first enunciated in
 
 Latrobe Steel Co.
 
 v.
 
 Commissioner,
 
 62 T.C. 456 (1974). The parties in the instant appeal dispute the continuing vitality of the
 
 Latrobe
 
 test due to a subsequent statutory change. In 1978, Congress passed section 133(b) of the Revenue Act of 1978, 92 Stat. 2763, 2783, which amended section 404(b) in the following manner:
 

 (b)
 
 Clarification of section
 
 404(b).—
 

 Subsection (b) of section 404 (relating to method of contributions, etc., having the effect of a plan) is amended by striking out “similar plan” and inserting in lieu thereof “other plan”.
 

 Section 133(c) then states that the amendments made by section 133 shall be effective for taxable years beginning after December 31, 1978. The parties argue whether section 133(b) is retroactive to the years at issue here and whether this change repudiates the
 
 Latrobe
 
 test. We do not reach this argument. Our reasoning instead is based on the regulation, § 1.162-10, first promulgated by the Secretary in 1958 under T.D. 6921, republished in 1960 in T.D. 6500 and still in effect today.
 

 [6]
 

 . We realize the appellant could at any time terminate or alter the plan although the monies of the trust could never revert to or inure to the appellant’s benefit. This minimal retention of control is not sufficient to make the benefits of the plan in any way illusory. Employers need to retain rights to alter or terminate plans to meet the changing needs of the employees and employer. This flexibility may be required with numerous types of plans including the medical, vacation and other welfare benefit plans specified by regulation. We hold that the critical inquiry is whether the funds in the plan may ever revert to or inure to the benefit of the company.