FRIEDMAN, Circuit Judge.
 

 This is an appeal from a judgment of the United States Claims Court dismissing the appellants’ tax refund suits covering federal income taxes for the taxable years 1975 and 1976. The Claims Court held that amounts paid by an employer’s educational benefits trust to the appellants’ children for college expenses were properly includible in the appellants’ gross income. We affirm.
 

 I
 

 The appellants Mr. Wheeler and Mr. McLaughlin were employed by the South Bend Tribune Corporation (South Bend) during the years in issue. Mr. Wheeler was executive vice president, and Mr. McLaughlin was personnel director.
 

 In 1975, South Bend entered into a college educational benefit plan agreement with Educo, Inc. (Educo), which provided funds for the college expenses of the children of certain key employees. South Bend made the arrangement “for the purposes of retaining such present employees, of attracting future employees, and generally to increase employee loyalty to Employer.”
 

 The plan provided for annual payments to the children of $2,000 toward their college expenses, with a total maximum payment of $8,000 per child. South Bend made sufficient contributions to the trustee of the plan to provide the funds to make the payments. Payments were made from the trust fund directly to the child or to the child’s creditors, and the employees had no right to receive any of the money in the trust or to control its disposition. If an employee left South Bend, the entitlement of his children to receive payments under the plan terminated.
 

 The plan was conceived as an employment incentive to obtain and retain the services of key personnel. South Bend’s board of directors selected the employees whose children would be eligible for the benefits. Of the 800 to 900 employees, only 16 employees in high level positions were designated for participation in 1975.
 

 During each of the years 1975 and 1976, the trustee of the plan paid $2,000 toward the college expenses of James Wheeler, the son of the appellants Warren and Jean Wheeler, and the same amount toward the college expenses of Elizabeth McLaughlin, the daughter of appellants James and Mary McLaughlin. The Commissioner of Internal Revenue determined that these amounts were includible in the appellants’ gross income and assessed deficiencies in their federal income taxes for 1975 and 1976. The Wheelers and McLaughlins paid the deficiencies and filed claims for refund, which were disallowed. They then filed refund actions in the Claims Court, which were consolidated for trial.
 

 Ruling from the bench, the Claims Court followed the Seventh Circuit’s decision in
 
 Armantrout v. Commissioner,
 
 570 F.2d 210 (7th Cir.1978), and held that the payments to the children were compensation to Messrs. Wheeler and McLaughlin and therefore constituted taxable income to them in the years in which the payments were made. The court further held that
 
 *1335
 
 such taxation of those benefits did not deny the appellants equal protection of the laws in violation of the due process clause of the fifth amendment.
 

 II
 

 Section 61(a) of the Internal Revenue Code of 1954 defines gross income to include “compensation for services.” This covers any economic or financial benefit conferred in any form on the employee unless it is specifically exempted by another section of the Code.
 
 Ritter v. United States,
 
 393 F.2d 823, 183 Ct.Cl. 875 (Ct.Cl.),
 
 cert. denied,
 
 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968).
 

 The Educo plan benefits that the Wheeler and McLaughlin children received were compensation for the services their fathers rendered to South Bend. The payments to the children conferred economic benefit upon their parents by providing some of the financial support for the children’s college education that the parents themselves otherwise would have had to furnish. As the Claims Court noted, Mr. Wheeler and Mr. McLaughlin “testified that they were concerned about their children’s college education and that they would have contributed to it, and did contribute to it, regardless of the payments made by Educo.”
 

 The appellants stress that they had no legal obligation to pay for their children’s college education. This fact is immaterial in determining whether the payments to the children constituted compensation to the fathers because it conferred an economic benefit on them. As the .Claims Court correctly pointed out, “for middle class and for upper middle class individuals, as these plaintiffs obviously were, college has become more than a luxury. College for one’s children has become, these days, a real necessity. Certainly something that every parent considers very carefully providing for his or her children.”
 

 The appellants provided financial support for their children’s college education. There is no reason to believe that if the children had not received benefits under the Educo plan they would not have attended college. As South Bend’s chief financial executive stated, the educational benefits plan “was a part and parcel of the entire benefits of being employed by the South Bend Tribune.”
 

 From the viewpoint of South Bend, the Educo plan also was part of the compensation it paid to the key employees whose children were selected for the plan. The plan was designed to enable the company to retain existing employees, to attract new ones, and to increase employee loyalty to the company. One of its purposes was to “free up” the “concern” of “top employees” about their children’s college, at least in part. The plan covered only a small number of key employees. Although South Bend did not bargain directly with the employees over the benefits they would receive under the plan, those benefits obviously were factors the company took into account in determining compensation. Moreover, South Bend initially considered the value of the employee’s services to it in deciding which employees to include under the plan.
 

 The fact, which the appellants stress, that the educational payments were made to the children and not to the employees is immaterial. It is the first principle of taxation that “income is taxed to him who earns it.”
 
 United States v. Basye,
 
 410 U.S. 441, 449, 93 S.Ct. 1080, 1085, 35 L.Ed.2d 412 (1973);
 
 Commissioner v. Culbertson,
 
 337 U.S. 733, 739-40, 69 S.Ct. 1210, 1212-13, 93 L.Ed. 1659 (1949).
 

 The appellants conceded at oral argument that if the payments had been made to them as reimbursement for the college expenses they had incurred, the payments would have been part of their gross income. The result should be no different because the company instead routed the payments directly to the children. The situation is analogous to attempts to avoid taxation by the anticipatory assignment of income, which “have frequently been held ineffective as means of avoiding tax liability.”
 
 Basye,
 
 410 U.S. at 450, 93 S.Ct. at
 
 *1336
 
 1086. The Tax Court and the Seventh Circuit have viewed an almost identical Educo plan, and the Fifth Circuit has viewed a similar plan, as involving an impermissible assignment of income.
 
 Armantrout v. Commissioner,
 
 67 T.C. 996 (1977),
 
 aff'd,
 
 570 F.2d 210 (7th Cir.1978);
 
 Saunders v. Commissioner,
 
 720 F.2d 871 (5th Cir.1983).
 

 The appellants argue that this court’s decision in
 
 Greensboro Pathology Associates v. United States,
 
 698 F.2d 1196 (Fed.Cir.1982), requires a contrary conclusion.
 
 Greensboro
 
 dealt with the tax consequences to the employer of an educational benefits trust similar to the Educo plan. This court held that the benefits plan was a “welfare benefits plan” and not a plan of “deferred compensation” under section 404 of the Code, such as stock options or annuities. The result was that the employer could deduct its payments to the trust when it made them as a business expense under section 162, instead of deferring the deduction under section 404 until the payments were made to the employee.
 
 Id.
 
 at 1203.
 

 As the court recognized in
 
 Greensboro
 
 in distinguishing
 
 Armantrout,
 
 “the tax consequences to the
 
 employee-recipients of
 
 an educational benefit plan” is an entirely different question from “the tax consequences to the employer” of such a plan. 698 F.2d at 1200, n. 3, emphasis in original. The tax consequences to the employee have nothing to do with the timing of the employer’s deduction. Whether a particular plan is viewed as in the “nature of deferred compensation” or as a welfare type benefit is immaterial in determining whether payments by the plan constitute income to the employee. This court recognized that “[a]ll types of fringe benefit plans have elements of compensation,”
 
 id.
 
 at 1200, and characterized the educational plan as involving “benefits provided the employees.”
 
 Id.
 
 at 1203.
 

 Ill
 

 Alternatively, the appellants contend that the assessment of taxes on the education benefits denies them the equal protection of the laws in violation of the due process clause of the fifth amendment. They point to section 1.117-3(a) of the Treasury Regulations, 26 C.F.R. § 1.117-3(a) (1984), which excludes from the parents’ gross income tuition remission benefits provided for the children of college faculty members. The appellants argue that the educational benefits at issue here are the same as the exempted tuition remission benefits and that the equal protection clause bars the disparate tax treatment of the two categories of benefits.
 

 Gross income generally does not include any amount received “as a scholarship” at an educational institution. 26 U.S.C. § 117(a) (1982). Treasury Regulation section 1.117-3(a) defines “scholarship” as including certain tuition remission benefits:
 

 If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.
 

 This provision was taken directly from the language in the Committee Reports on the 1954 Code, which indicated that Congress intended “scholarship” to cover such tuition remission. H.R.Rep. No. 1337, 83d Cong., 2d Sess. at A37,
 
 reprinted in
 
 1954 U.S.Code Cong. & Ad.News 4017, 4173-74; S.Rep. No. 1622, 83d Cong., 2d Sess. at 188,
 
 reprinted in id.
 
 at 4621, 4823. In 1984, Congress enacted a new section 117(d) which in effect codifies and broadens the above regulation. Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 532, 98 Stat. 494 (to be codified at 26 U.S.C. § 117(d)).
 

 Contrary to the appellants’ contention, the tuition-remission benefits that are thus made nontaxable are not the same as the cash educational benefits of the present case. Under the remission plan, no money is paid to the child or the parent/facuity member.
 

 Congress has “especially broad latitude in creating classifications and dis
 
 *1337
 
 tinctions in tax statutes.”
 
 Regan v. Taxation With Representation,
 
 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983).
 
 See Madden v. Kentucky,
 
 309 U.S. 83, 87-88, 60 S.Ct. 406, 407-408, 84 L.Ed. 590 (1940). Congress may provide a tax benefit for a particular class of taxpayers provided the classification bears a rational relation to a legitimate governmental purpose.
 
 Regan v. Taxation With Representation,
 
 461 U.S. at 547, 103 S.Ct. at 2002. The presumption of constitutionality is extremely difficult to overcome. “The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.”
 
 Madden v. Kentucky,
 
 309 U.S. at 88, 60 S.Ct. at 408.
 

 The issue thus is whether there is a rational basis for different treatment of the tuition remission benefits exempted by regulation and the educational benefits at issue here. The basis for the distinction need not appear on the face of the regulation, the implementing legislation, or the history of the provision.
 
 First National Bank of Oregon v. United States,
 
 571 F.2d 21, 25, 215 Ct.Cl. 609 (1978). “A statutory discrimination will not be set aside if any stated fact reasonably may be conceived to justify it.”
 
 McGowan v. Maryland,
 
 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The same principle applies in dealing with a Treasury regulation, where there is “long-standing precedent against invalidating on equal protection grounds a Federal tax regulation such as the one in question here.”
 
 First National Bank,
 
 571 F.2d at 25.
 

 One rational basis here is the difference between the direct cash payment by the employer to children attending college and the remission of tuition charges by an educational institution other than the one that employs the parent. The administrative difficulty in valuing such noncash benefits may be substantial.
 

 Another distinction is that the tuition remission programs are available to a large number of employees of an educational institution, whereas the Educo benefits are limited to a small number of key employees. In recently enacting a “fringe benefits provision” as part of the Deficit Reduction Act of 1984, which continues the exclusion for tuition remission programs, Congress attempted to “set down clear guidelines in the area of noncash compensation.” H.R.Rep. No. 432 (Pt. 2), 98th Cong., 2d Sess. 1590 (1984) U.S.Code Cong. & Admin. News 1984, pp. 697, 1214. In so doing, Congress made clear that nondiscrimination is “an important common thread among the types of fringe benefits which are excluded” from taxation.
 
 Id.
 
 at 1592, U.S.Code Cong.
 
 &
 
 Admin.News 1984, p. 1216. To be exempt from taxation, tuition remission benefits may not be restricted to “officers, owners, or highly compensated employees” of an educational institution. Deficit Reduction Act, § 532 (to be codified at 26 U.S.C. § 117(d)). Congress rationally may have decided to limit tax-exempt status to those educational benefits (tuition remission) for which it believed there was less likelihood of tax avoidance than in the case of direct cash benefits.
 

 Finally, Congress could have reasonably decided to exempt tuition remissions for children of college faculty members as a way of promoting higher education by encouraging qualified people to enter and to remain in the academic teaching profession despite low earnings.
 

 The taxation to the appellants of the educational benefits paid to their children did not deny the appellants equal protection of the laws in violation of the due process clause of the fifth amendment.
 

 CONCLUSION
 

 The judgment of the United States Claims Court is affirmed.
 

 AFFIRMED.